## WRIGHT v. BROWN.

1. EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATES—
BILL TO REACH ASSETS VOLUNTARILY CONVEYED.

Generally when no claims have been proved against an estate, a
bill in equity may not be maintained by a special administra-
tor to reach real estate voluntarily conveyed by the deceased
(Act No. 288, chap. 2, §§ 60, 61, Pub. Acts 1939).

2. SAME—SPECIAL ADMINISTRATOR—APPOINTMENT—POWERS.

A special administrator may be appointed by the judge of pro-
bate to take charge of the estate of one deceased and to pro-
tect and conserve the same until an executor or administrator
shall be appointed, and, upon order of the probate court, com-
mence and maintain actions as an administrator (Act No. 288,
chap. 2, §§ 60, 61, Pub. Acts 1939).

3. SAME—VESTING OF TITLE TO PERSONALTY.

Title to personal property of a deceased, testate or intestate,
vests in the personal representative until administration is
completed and the estate is fully settled and distributed, or
until he chooses or is forced to part with it earlier.

4. SAME—TITLE OF INTANGIBLES—ACTION.

The personal representative, as holder of the legal title, is alone
authorized to bring an action for the recovery of a debt due
to the estate.

5. SAME—ACTION TO RECOVER ASSETS OF THE ESTATE.

Under the probate code, a special administrator may commence
and maintain an action to recover an asset of the estate and
the general administrator may prosecute to final judgment
any action so commenced (Act No. 288, chap. 2, §§ 60, 61,
Pub. Acts 1939).

6. FRAUDULENT CONVEYANCES—TRANSFER OF STOCK—CIRCUMSTANCES
AT TIME OF TRANSFER.

Whether or not a transfer of stock of a corporation was made
with the intent to defraud creditors of the transferor depends
upon the circumstances as of the date of the transfer.

7. APPEAL AND ERROR—CHANCERY CASES—DE NOVO HEARING.

A suit to set aside a transfer of stock being a chancery case, is heard by the Supreme Court *de novo*.

8. SAME—FINDINGS ON ISSUES OF FACT.

Where there are issues of fact involved in a chancery case, the Supreme Court gives great weight to the finding of facts made by the trial court and does not reverse decrees unless persuaded they are not in accordance with the just rights of the parties.

9. SAME—INSOLVENCY OF TRANSFEROR OF STOCK—FINDINGS OF COURT.

In suit to set aside transfer of stock of a corporation, finding that transfer was made at a time when transferor was insolvent and was without consideration is affirmed by the Supreme Court on *de novo* review (3 Comp. Laws 1929, §§ 13397, 13398).

10. FRAUDULENT CONVEYANCES—INSOLVENCY OF TRANSFEROR—VALUE OF PROPERTY TRANSFERRED.

Transfer of stock is set aside as a fraud upon creditors, where transferor was insolvent at time transfer without consideration was made and stock had value although of an uncertain amount (3 Comp. Laws 1929, §§ 13397, 13398).

11. EQUITY—LACHES—LAPSE OF TIME.

Mere lapse of time without a showing of prejudice will not constitute laches.

12. FRAUDULENT CONVEYANCES—INSOLVENT TRANSFEROR OF STOCK— LACHES.

Where decedent while insolvent transferred stock having some value to his sister and another person without consideration, proceeding to recover such stock which was not instituted until over six years later was not open to defense of laches where receivership proceedings had been pending for about three years after the transfer, transfer was not discovered by any creditor until after death of transferor some six years after it had been made, and there is no showing of any change in conditions after the transfer which would make it inequitable to enforce plaintiff administrator's claim (3 Comp. Laws 1929, §§ 13397, 13398).

13. FRAUD—PRESUMPTIONS—BURDEN OF PROOF—EVIDENCE.

While fraud, justifying the setting aside of a conveyance, will not be presumed as it must be affirmatively proved and the burden of proving it rests upon the party who relies upon it, it need not be shown by direct proof, but may be proven by inference from facts and circumstances (3 Comp. Laws 1929, §§ 13397, 13398).

14. FRAUDULENT CONVEYANCES—CONSIDERATION—PREVIOUS ASSIGN-
MENT—SUPPORT OF PARENT.

Transfer of stock of corporation, made some 11 years after al-
leged assignment by transferee of her interest in certain prop-
erty of the corporation involved to the transferor of the stock
and alleged support of mother of the transferee and transferor
*held,* to have been done with intent to defraud creditors where
made without consideration under record showing nothing to
rebut presumption that support of parent was gratuitous
(3 Comp. Laws 1929, §§ 13397, 13398).

15. PARENT AND CHILD—PRESUMPTIONS AS TO SUPPORT.

One who supports one or both parents is presumed to do so
gratuitously.

Appeal from Van Buren; Warner (Glenn E.), J.
Submitted February 5, 1947. (Docket No. 54, Calen-
dar No. 43,597.) Decided April 17, 1947.

Bill by William P. Wright, special administrator
of estate of Frank H. McKeyes, deceased, against
Grace M. Brown and another to set aside assign-
ments to shares of capital stock and injunction.
Amended bill of complaint filed by general adminis-
trator. Decree for plaintiff. Defendants appeal.
Affirmed.

*Roscoe G. Goembel, David Anderson, Jr.,* and *Carl
Benton,* for plaintiff.

*Charles W. Gore* and *Robert C. Porter,* for
defendants.

SHARPE J. This is a suit to set aside assignments
of 97 shares of stock of Neilsen, Inc., 51 shares of
which are in the name of Grace M. Brown and 46
shares of which are in the name of Maude C.
Lamoreaux. Because the dates of these transfers
are important, we set out the relevant facts as
found by the trial court.

"In 1894 Juan McKeyes opened a so-called private bank at Lawton, Michigan, under the name of Juan McKeyes & Co., Bankers. Later, the time not shown by the record, his son Frank H. McKeyes became a partner. Juan McKeyes died March 28, 1925, leaving as sole heirs-at-law his wife Maria E. McKeyes, the defendant Grace M. Brown, daughter, and Frank H. McKeyes, son. His estate was not probated. After the death of Juan McKeyes, Maria E. McKeyes, Grace M. Brown, and Frank H. McKeyes, as heirs of Juan McKeyes, became the owners of the business. They continued to run it under the name of Juan McKeyes & Co., Bankers, the same as the father and husband had done. It was conducted by Frank H. McKeyes for himself and as the representative of his mother and sister.

"May 9, 1932, the bank closed its doors. Frank H. McKeyes filed petition for appointment of receiver and liquidation. Maria E. McKeyes and Grace M. Brown also requested appointment of receiver. A temporary receiver was appointed. Within three weeks 262 depositors, representing 92 per cent. in value of deposits, signed an agreement reading as follows:

" 'We each agree that we will not, for a period of five years, withdraw any of the sums which may be credited to our several accounts at this time in said bank, unless in the opinion of the bank a shorter time can be fixed, but will do all that is reasonable and proper to assist the bank to regain its financial standing, it being understood that deposits made by us on checking accounts from and after this date, shall be subject to check against but that our withdrawals from this fund shall be as reasonable as possible. It being the purpose of this agreement to make it possible, and enable the bank to cope with the present unsettled financial conditions and to prevent a loss on the part of the depositors.'

"May 29, 1932, Frank H. McKeyes filed a petition for discharge of temporary receiver setting forth that:

" 'Since the appointment of said receiver, a very large percentage of the depositors of the said Juan McKeyes & Company, Bankers, have solicited these petitioners that the bank might reopen, and that it might continue in business, and your petitioners have made efforts to enable them to reopen said bank, and to ask for discharge of receivership, and dismissal of this case.   *   *   *

" 'To this end, depositors of said bank, on their own volition, have circulated and signed agreement in words and figures as follows:' This was followed by copy of the agreement above set out.

"The widow and daughter filed consent in writing to the dismissal. The bank was reopened because 92 per cent. of the depositors so requested.

"April 23, 1937, Frank H. McKeyes commenced a second proceeding for receivership alleging that he was 'the sole surviving partner and sole proprietor of Juan McKeyes & Company, a private bank.' A receiver was appointed. May 15, 1937, inventory was filed. It contained a verified report addressed to the commissioner of State banking department signed by Mr. McKeyes and reading:

" 'I, Frank H. McKeyes, sole owner of Juan McKeyes & Company, Lawton, Michigan, by virtue of being the sole surviving partner of said company hereby respectfully submit the report of my doings as follows:

" '1. APPOINTMENT OF RECEIVER. That petition was made to the circuit court of Van Buren county, by me, for the appointment of receiver to take over the affairs of Juan McKeyes & Company, Lawton, on grounds of insolvency. That temporary receiver was appointed by the court April 23, 1937 and permanent receiver was appointed by the court May 6, 1937.

" '2. STATEMENT OF CONDITION. A complete statement of the condition of the Juan McKeyes & Company, Lawton, Michigan, as of the close of business May 12, 1937, which date is the last day in which I had custody over it. I further state that the

amounts and items shown in this statement together with the supporting schedules present a true statement of the affairs of this company as of the above referred to date, to my best knowledge and belief.'

"Attached to the report was the list of outstanding certificates of deposit amounting to $170,637.40.

"May 29, 1937, order was entered that all creditors having claims against the bank file proof thereof with the clerk of the court or with the receiver on or before September 1, 1937, and that the order be published for 12 consecutive weeks.

"August 24, 1938, receiver presented a petition for hearing and allowance of claims, to which was attached a list of the claims. September 28, 1938, order was signed allowing all claims except five therein named. A dividend of 3.35 per cent. was paid. Receiver was discharged July 24, 1940. Frank H. McKeyes died May 21, 1943. Administrator was appointed on petition of creditor. Depositors of the old bank filed 87 claims against the estate of Frank H. McKeyes. They were allowed by probate court in the sum of $135,665.36, less the dividend of 3.35 per cent. On appeal to circuit court the allowance of the claims was affirmed with minor modifications."

Neilsen, Inc., is a Michigan corporation, operating at Lawton, Michigan. Its predecessor, Neilsen-Barton Chuck & Tool Company, became indebted to Juan McKeyes & Company prior to 1925. On March 21, 1925, Juan McKeyes & Company obtained a default judgment against the corporation for $8,815.03. Execution was issued and a large amount of machinery and personal property was sold by the sheriff to Juan McKeyes & Company for $4,000. On March 29, 1926, Maria E. McKeyes and Grace M. Brown executed a bill of sale to Frank H. McKeyes of their interests in the property acquired through sheriff's sale. On April 15, 1926, Frank H. McKeyes

gave a bill of sale of the same property to Neilsen, Inc., for a consideration of $1 and other valuable considerations. On the same date, Frank H. McKeyes, Holger Neilsen and Fred S. Squires executed articles of incorporation of Neilsen, Inc. The personal property described in the bill of sale was taken over by the corporation at the price of $39,693 subject to an indebtedness of $7,026.43, which the corporation assumed and agreed to pay.

At a meeting of the stockholders of the corporation held in January, 1928, Frank H. McKeyes, Robert Lamoreaux and Fred S. Squires were elected directors and on the same date McKeyes was elected president of the corporation. No further meeting of the stockholders was held until November 6, 1937, when the authorized capital stock of the corporation was reduced from 400 shares with $100 par value to 200 shares. On the same day, at a special meeting of the board of directors, Grace M. Brown, the holder of 316 shares of stock prior to the reduction thereof, was elected secretary and treasurer.

On June 25, 1941, Grace M. Brown executed a trust agreement transferring 97 shares of the capital stock of Neilsen, Inc., to George Stanard, trustee. The trust provided that Frank H. McKeyes was to have the income from the stock during his lifetime. He died May 21, 1943, whereupon, in pursuance of the trust agreement, the stock certificate held in the name of the trustee was cancelled and stock certificates reissued to Grace M. Brown for 51 shares and Maude Lamoreaux for 46 shares.

No proceedings were taken by any heir at law to probate the estate of Frank H. McKeyes within 30 days after his death. On June 21, 1943, one John Robinson filed a petition for the appointment of general administrator. On the same date, he filed a petition alleging that he was one of the principal

creditors of deceased and setting up that a petition for the appointment of a general administrator had been filed, but that such appointment would be delayed owing to the notice required by law to be given to interested parties; that a special administrator should be appointed to collect, take charge of, preserve and manage said estate consisting of stock in an incorporated company and dividends of the estimated value of $10,000; and that in order to prevent certain persons from depleting the estate, a special administrator should be appointed. The probate court of Van Buren county appointed William P. Wright, as special administrator. He, thereafter, as such special administrator filed a petition in the probate court setting up that Grace M. Brown had obtained possession of certain shares of stock and had new certificates issued in her name and in the name of certain other persons; that he feared that such certificates would be transferred to innocent purchasers and would tend to defeat creditors of the estate; and that a suit should be started at once to have the holders of said certificates of stock declared to be trustees for the benefit of the special and general administrators.

On June 28, 1943, the judge of probate made an order giving the special administrator authority to commence the present suit. On July 1, 1943, the special administrator filed a bill of complaint against the defendants named herein. On the above date an injunction was issued against the defendants enjoining them from disposing of any of the shares of stock held in the name of Grace M. Brown and Maude Lamoreaux and enjoining Neilsen, Inc., from paying to said defendants any of the dividends or profits on the stock owned by or in the name of Frank H. McKeyes at the time of his death.

On September 28, 1943, William P. Wright qualified as general administrator of the estate of Frank H. McKeyes. On July 12, 1944, claims against the estate were allowed in the probate court in the sum of $135,665.36 less 3.35 per cent. See *In re McKeyes' Estate*, 315 Mich. 369.

On November 6, 1944, Neilsen, Inc., and Maude Lamoreaux filed an answer to the amended bill of complaint in which they denied that Frank H. McKeyes was the owner of any interest in Neilsen, Inc., and denied authority of the probate court to give plaintiff leave to file suit. On July 9, 1945, Grace M. Brown filed an answer to the amended bill of complaint which was practically identical to the answer filed by defendants Neilsen, Inc., and Maude Lamoreaux. On November 6, 1944, a motion was made to dismiss the bill of complaint, but was never brought on for hearing and no decision was rendered thereon.

The cause came on for trial and on April 10, 1946, a decree was entered which contained the following provisions:

"(a) That the temporary injunction heretofore issued in this case shall be and the same is hereby made permanent, and is and shall remain henceforth in full force and effect.

"(b) That the pretended transfer and assignment of stock in Neilsen, Inc., to Grace M. Brown, as aforesaid, is fraudulent and void from its inception and did not transfer to said Grace M. Brown the ownership of said stock and said Grace M. Brown is hereby declared to have taken and held said stock as trustee for the benefit of the several creditors of said Frank H. McKeyes.

"(c) That the surrender and cancellation of said stock transferred to Grace M. Brown and the issu-

ance by Neilsen, Inc., of stock to the trustee named in said trust agreement was void and did not transfer any ownership to said trustee in trust.

"(d)   That the surrender and cancellation of said stock so issued to said trustee and the issuance of 51 shares of stock to said Grace M. Brown and 46 shares of stock to Maude Lamoreaux was void and did not transfer to said Brown or Lamoreaux any ownership of said stock.

"(e)   That the said Grace M. Brown and Maude Lamoreaux shall forthwith surrender to Neilsen, Inc., for cancellation said certificates of stock and if they fail to so surrender for cancellation said certificates of stock this decree shall operate as such surrender and cancellation."

Defendants appeal and urge that plaintiff as special administrator of the estate of Frank H. McKeyes, deceased, has no power or authority in law to file suit to declare any sale, transfer, assignment or conveyance fraudulent as to creditors.

It is the general rule that when no claims have been proved against the estate, a bill in equity may not be maintained by a special administrator to reach real estate voluntarily conveyed. See *Windoes* v. *Colwell,* 247 Mich. 372, and *Angel* v. *Waligora,* 296 Mich. 142.

Under chapter 2, § 60, of the probate code, Act No. 288, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2 [60], Stat. Ann. 1943 Rev. § 27.3178 [130]), a special administrator may be appointed by the judge of probate to "act in collecting and taking charge of the estate of the deceased and protecting and conserving the same until an executor or administrator shall be appointed." While under section 61 of the same act, a special administrator may, upon an order of the probate court, commence and maintain actions as an administrator.

''The general rule is that· title to personal property of a deceased, testate or intestate, vests in the personal representative until administration is completed and the estate is fully settled and distributed, or until he chooses or is forced to part with it earlier.'' *In re Reidy's Estate,* 164 Mich. 167.

''And, except under special circumstances, such administrator, or other personal representative, as holder of the legal title, is alone authorized to bring an action for the recovery of a debt due to the estate.'' *Brobst* v. *Brobst,* 190 Mich. 63.

See, also, *Michigan Trust Co.* v. *City of Grand Rapids,* 262 Mich. 547 (89 A. L. R. 840).

We hold that the special administrator under the authority above cited. is given authority to commence and maintain an action as special administrator; and that the general administrator may prosecute to final judgment any action so commenced.

Whether the transfer of the stock was made with ·the intent to defraud creditors. depends under the circumstances of this case upon the date of such transfer. Plaintiff urges that the transfer was made in 1937. Defendants claim that Grace M. Brown became the owner of the stock in 1926 and 1927.

The trial court concluded that the stock was transferred in 1937 and gave as his reasons therefor the following:

''The stock was assigned to Grace M. Brown, February 26, 1937. This finding is based on the following proof: August 2, 1937, an attorney wrote Mrs. Brown relative to the right of Neilsen, Inc., to pay dividends or make advances on the stock to Frank H. McKeyes. August 5, 1937, Mrs. Brown wrote the attorney—'I received your letter of Aug. 2d and in order to protect Mr. Gairing, I hereby ratify all dividend payments heretofore made to my brother Frank H. McKeyes, on the stock of Neilsen, Inc.,

owned and held by me.· I would suggest,·however, that beginning with Aug. 14th the payments be made to me in order to protect Frank against any one who might otherwise claim the transfer of stock was fraudulent; it occurred Feb. 26, 1937.

" 'I am in favor of an incorporation, if the old company cannot be reinstated by a small payment to the State of Mich. Suppose you ascertain the least amount of taxes the State will take to reinstate the company and advise me.'

"This conclusion is supported by the testimony of Hubert J. Walter, a handwriting and disputed document expert, which it is not necessary to review in detail.

"The conduct, indifference, and silence of Mrs. Brown were not consistent with that of a person who owned 316 shares in a corporation which had a total outstanding stock of 400 shares, before the capital was reduced in 1937 to 200 shares. She did not become a stockholder of record until November 12, 1937. If her claim of ownership is true then for approximately 10 years she did not attend meeting of stockholders or directors, or have the stock voted under a proxy but allowed Frank H. McKeyes to appear of record as owner, to vote the stock as owner, to be elected president and director, to neglect to hold a meeting of stockholders or directors from January 18, 1928, to November 6, 1937, to manage affairs so loosely that the charter was suspended by the secretary of State and permitted him to collect dividends in 1937. These facts and circumstances indicate Frank H. McKeyes still retained his ownership of the stock. ·

"5. Frank H. McKeyes was insolvent in 1937. He admitted insolvency by filing petition for receivership. The amount realized from the assets confirmed his admission. There was no consideration for the assignment of stock."

This being a chancery case, we hear it *de novo.* Where there are issues of fact involved, we give

great weight to the finding of facts made by the trial court and do not reverse decrees unless persuaded they are not in accordance with the just rights of the parties. We affirm the trial court upon this issue.

It is next urged that Frank H. McKeyes did not render himself insolvent by the transfer of the capital stock of Neilsen, Inc., to Grace M. Brown. Having in mind that this transfer of stock was made in 1937, it must be conceded that he was insolvent at that time. He admitted insolvency by filing a petition for receivership, but it is urged that there can be no fraud where the assets involved are worthless.

This claim of defendants is based upon the proposition that Neilsen, Inc., stock was valueless in 1926 and 1927, but because of our holding that the stock was transferred in 1937, whether or not it had value must be determined as of that date. The value of the stock at the time of the transfer is uncertain, but at the time of the stock reduction on November 10, 1937, Walter Gairing, a stockholder and manager of the company, fixed the value of the business at $20,000. This valuation is fortified by the fact that the business of the company reached a point where dividends began to be paid in the latter part of 1939 and 1940. We conclude that the stock had value when it was transferred in 1937.

It is also urged that the creditors of Frank H. McKeyes were guilty of laches in not pressing their claims at an earlier date. Mere lapse of time without a showing of prejudice will not constitute laches. See *Kelley* v. *Hoogerhyde,* 314 Mich. 37, and cases cited therein.

Prior to May 24, 1940, when the proceedings in receivership were terminated, the creditors were not free to act in their own behalf insofar as instituting any action for the recovery of the assets of Frank H. McKeyes. The record does not show that any creditor knew anything about the transfer of

the stock until after the death of Frank H. McKeyes in May, 1943.

There has been no showing of any change in conditions from the time of the transfer in 1937 until the present suit was started that would render it inequitable to enforce the claim of plaintiff. Defendants were not prejudiced by the delay.

Was the conveyance made with intent to defraud creditors?

Section 13397, 3 Comp. Laws 1929 (Stat. Ann. § 26.886), provides:

"Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."

Section 13398, 3 Comp. Laws 1929 (Stat. Ann. § 26.887), provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

The general rule is that fraud will not be presumed, but must be affirmatively proved. The burden of proving fraud rests upon the party who relies upon it. Fraud need not be shown by direct proof, but may be proven by inference from facts and circumstances.

Defendants urge that the consideration for the transfer of the stock was the assignment by Grace M. Brown of her interest in the machinery of Neilsen-Barton Chuck & Tool Company and the support of Mr. McKeyes' mother for a period of 13 years. The assignment above referred to was made

in 1926 or 11 years prior to the time when the stock was transferred to her. As to the support of her mother, the presumption is that one who supports one or both of her parents does so gratuitously. The record contains no proof to rebut this presumption. We conclude, therefore, that there was no consideration for the transfer of the stock and that such transfer was done with the intent to defraud creditors.

Other questions have been raised, but do not require consideration.

The decree of the circuit court is affirmed, with costs to plaintiff.

CARR, C. J., and BUTZEL, BUSHNELL, BOYLES, REID, NORTH, and DETHMERS, JJ., concurred.