REED v. KURDZIEL.

1. APPEAL AND ERROR—ACCOUNTING—DECREE—OPINION.
    The Supreme Court is governed by the amount allowed in the decree in a suit for accounting, rather than a different amount set forth in the trial court's opinion.

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur, Appeal and Error § 595.
[2] 2 Am Jur, Agency § 307.
[3] 2 Am Jur, Agency § 301.
[5] 3 Am Jur, Appeal and Error § 900.
[6] 2 Am Jur, Agency § 50.

2. Principal and Agent—Commissions on Sales of Personalty—Intent.

> All the circumstances must be considered when determining whether the contract of employment between the principal and the broker or agent as to sale of personalty was intended to embrace the latter's right to commissions on sales made by the principal or by another agent.

3. Same—Sales—Commissions—Procuring Cause.

> An agent is entitled to recover his commission for the sale of personal property upon which the agent was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent even after the authority of the plaintiff agent has been cancelled by the principal.

4. Accounting — Salesman's Commissions — Reorders — Distributors—Evidence.

> Finding of trial court in salesman's suit for accounting as to commissions claimed for sales of defendant's foundry supplies that plaintiff was entitled to commissions on reorders as well as original sales and sales to distributors as well as users and that the contract was without limitation as to time *held*, supported by ample evidence.

5. Appeal and Error—Chancery Cases—De Novo Hearing—Evidence.

> The Supreme Court is reluctant to disturb findings of the trial court in an equity suit, heard *de novo* on the record, where he had an opportunity to view the parties while presenting directly conflicting testimony.

6. Principal and Agent—Sales—Commissions—Termination of Contract.

> A principal who terminates a salesman's contract of employment is subject to liability to indemnify the agent for losses resulting to him after such termination from authorized transactions entered into before the termination.

Appeal from Jackson; Boardman (Harry D.), J. Submitted January 10, 1958. (Docket No. 36, Calendar No. 47,244.) Decided April 14, 1958.

Bill by Milford B. Reed, with appeal continued in the name of Hilda W. Reed, executrix, against Walter F. Kurdziel and Stella Kurdziel, copartners do-

ing business as White Iron Foundry, for accounting and to secure sums due as sales commissions. Decree for plaintiff. Defendants appeal. Affirmed.

*Rosenburg, Painter & Stanton* (*Lawrence L. Bullen,* of counsel), for plaintiff.

*Poppen, Street & Sorensen* (*Harold M. Street,* of counsel), for defendants.

KAVANAGH, J. Plaintiff-appellee herein is Hilda W. Reed, the executrix of the estate of Milford B. Reed, deceased. The plaintiff at the time of the trial was Milford B. Reed. Mr. Reed has died since the trial of this case in the circuit court and his executrix has been substituted as plaintiff-appellee herein. When the word "plaintiff" is used throughout this opinion reference is being made to the deceased, Milford B. Reed.

Plaintiff was engaged in the business of selling for 38 years. Since 1940, he was a manufacturer's agent in the foundry supply field.

The defendant White Iron Foundry was a copartnership consisting of Walter Kurdziel and his wife, Stella Kurdziel. The foundry is located in Rothbury, Michigan, and has been operated by the copartnership since 1939. The White Iron Foundry is engaged in the manufacture of foundry cleaning "Mill Stars"—a type of pointed casting used in the cleaning of other foundry castings. Prior to 1949 Walter F. Kurdziel acted as the sole salesman for the White Iron Foundry. After 1949 he devoted his entire efforts to the manufacturing end of the business.

In April of 1950 Mr. Reed contacted appellant Walter F. Kurdziel and discussed with him the possibility of selling White Iron Foundry "Mill Stars." Mr. Reed was at that time the representative of

Huffer Foundry, another manufacturer of foundry stars. Eventually an oral agreement was made whereby Mr. Reed was to sell defendants' "Mill Stars" to the users of said "Mill Stars." The agreement further provided that Mr. Reed was to receive as a commission whatever amount he was able to obtain for the foundry "Mill Stars" over and above a certain basic price which was to be established by the defendants. That such a contract was entered into is admitted by both parties. The disagreement between the parties, which is the basis of this law suit, has to do with 2 points.

Plaintiff claims that under the terms of the contract all customers for White Iron Foundry products obtained by the plaintiff were to be the plaintiff's exclusive customers; that he would receive commissions, not only on the original orders taken from the customers he had obtained for White Iron Foundry, but would receive commissions on all reorders from such customers.

Defendants claim plaintiff was to receive his commissions only upon written orders which were obtained by him and transmitted by plaintiff to the defendants, on which written orders he would compute and specify his commission or at least furnish such information that the commission could be readily computed.

The original agreement contemplated sales only to ultimate users of the "Mill Stars." A later agreement was reached as to "distributor accounts." The "distributor" customers purchased in larger lots and resold to the ultimate users.

The original agreement relative to distributor accounts was that plaintiff would receive a flat commission of $5 a ton. The parties were informed that the adding of the commission to the basic price by the defendants probably created a violation of the regulations of the office of price stabilization. Since

additional bookkeeping was required to answer these objections, they revised their original agreement. It was agreed on revision that on all orders that were received from distributors appellants would bill the distributors at the basic price and plaintiff would bill the distributors direct for his commission. Plaintiff wrote to each of his distributor accounts on or about May 16, 1951, advising them of the new arrangement. The only exception to the original arrangement had to do with what is referred to as the "Studebaker account."

Plaintiff's first contact with defendants and appellants was in April, 1950. In May, 1950, he obtained an order from Studebaker. Subsequent orders were obtained in August, 1950, and the commissions were duly paid. At that time plaintiff was associated with Mr. William E. Hunt and doing business under the corporate name of Jackson Supply, Inc. On August 19, 1950, plaintiff wrote appellants, indicating that he and Mr. Hunt had dissolved their business relationship and that he was allowing Mr. Hunt the Studebaker account.

On September 11, 1950, plaintiff again wrote defendants, indicating that he was to have an overriding commission on the "Mill Stars" sold to Studebaker corporation. He also indicated that the company should make the commission check for Studebaker sales to Jackson Supply, Inc., as formerly. Commissions were subsequently paid on all orders, secured by William E. Hunt through March, 1951. No further commissions were paid after that date. Subsequently Jackson Supply, Inc., was dissolved and plaintiff took an assignment from the corporation and from Hunt and wife for any claims they might have against the White Iron Foundry for commissions due as a result of this Studebaker account.

Apparently plaintiff did an excellent job of selling. The arrangement appears to have been a financial

success for both plaintiff and defendants until April 19, 1954, when plaintiff wrote the following letter to defendant-appellant Walter Kurdziel:

"Mr. Walter Kurdziel, President.
White Iron Foundry Company,
Rothbury, Michigan.

*"Dear Sir:*

"I have just completed a long selling trip.

"Imagine my surprise when, on some calls, I found out that you were still shipping to customers whom I obtained for you originally, but upon which no commissions have been paid to me.

"In a couple of instances I found that this situation is of long standing, and my total commissions over that period of time would amount into the thousands of dollars.

"I am sure you would want to be fair and honest about this situation.

"Have you any objection to my bringing up a certified public accountant to go over your books so that I can receive commissions which are due me?

"Very truly yours,

M. B. Reed."

The above letter brought the following reply on April 21, 1954:

"M. B. Reed
1413 Gilletts Lake Road
Jackson, Michigan

*"Dear Sir:*

"In reply of your letter of April 19th, I find going through my books, that we do not owe no commissions whatsoever.

"The last order we received from you was in February from International Harvester Company. Commission of $111.67 was paid you in (on) March 18th.

"This is also to advise you that you can just forget the White Iron Foundry Company. We do not care to receive any more orders from you. You are the only one man of all the people we do business with, have most trouble with.

"Very truly yours,
"WHITE IRON FOUNDRY Co.
(s) W. KURDZIEL."

This letter obviously had the effect of terminating the services of agent Reed and resulted in the present litigation.

Plaintiff filed a bill of complaint on December 27, 1954. Trial resulted in an opinion for plaintiff in the amount of $3,923.76, consisting of $2,962.51 claimed as commissions on the so-called "user" accounts and $961.25 on the so-called "distributor" accounts and included all repeat orders from buyers from whom plaintiff had obtained an order for appellants up to the time of trial. Decree was subsequently entered in the amount of $3,873.76. We are governed here by the amount set forth in the decree.

Defendants made their appeal to this Court, claiming: (1) that the lower court erred in finding that plaintiff's version of the agreement was the correct one contrary to what appellants contend was the great weight of the evidence; (2) that the lower court erred in allowing commissions on an account which had been abandoned by plaintiff; (3) that the lower court erred in allowing commissions on sales made to such customers after plaintiff's agency was terminated in April, 1954; (4) that the court erred in holding appellants liable for commissions on subsequent sales to such distributor accounts, by which plaintiff indicated that he would bill the distributors directly for his commissions.

An examination of the law with reference to commissions allowed agents or brokers seems to indicate that it is difficult to determine a set line of decisions,

particularly with reference to the right of an agent with an exclusive agency to recover commissions on sales made where he is the procuring cause. However, when they are viewed as a whole and brought into proper focus, they disclose the law applicable to the question is well settled and that the seeming confusion results from the application of that law to the particular facts of the specific cases in question. 12 ALR2d 1360, 1363, states as follows:

"The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all the circumstances must be considered. * * * This rule is recognized and stated in the American Law Institute, 2 Restatement, Agency, § 449, Comment a."

It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. *Reade* v. *Haak,* 147 Mich 42; *Case* v. *Rudolph Wurlitzer Co.,* 186 Mich 81; *MacMillan* v. *C. & G. Cooper Co.,* 249 Mich 594. In Michigan the

rule goes further to provide if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause. *Heaton* v. *Edwards*, 90 Mich 500; *McGovern* v. *Bennett*, 146 Mich 558; *MacMillan* v. *C. & G. Cooper Co., supra*.

Applying the law to the facts in the instant case, it would appear that there was ample evidence by which the lower court could find that an oral agreement was entered into by which plaintiff-appellee Reed was to handle the sales of defendants-appellants' "Mill Stars;" that such contract was without limitation as to time; that plaintiff-appellee was to receive commissions on not only the original sales submitted by him but on all reorders. There was further evidence by the defendants-appellants themselves that subsequent to the agreement defendant Walter Kurdziel made no attempt to sell "Mill Stars," but confined his activities to the manufacturing end of the business.

The testimony of both appellants and appellee was of such a character that the trial court might well believe plaintiff-appellee's version of the case and might well find it substantially supported by the testimony of defendants-appellants, as well as by the acts of defendants-appellants. The trial court had an opportunity to view the parties while testifying, to see their demeanor on the stand, to hear first hand their explanations of the facts relating to the contract itself and the acts of the parties. Direct conflict existed in the testimony of witnesses as to the content of the oral contract. The Supreme Court is reluctant to disturb findings of the trial court which involve the adoption of 1 of 2 versions of conflicting testimony. *Rubsam Corp.* v. *General Motors Corp.*, 281 Mich 691; *Beardsley* v. *Beardsley*, 316 Mich 303; *Wright* v. *Brown*, 317 Mich 561; *Kirby Terminal Co.*

v. *Detroit,* 339 Mich 155. A careful examination of
the complete record in this case leads us to believe
that we could not say that the testimony requires
intervention by this Court in the interests of equity.
While the Supreme Court hears a chancery case *de
novo* on appeal, it must recognize the advantage pos-
sessed by the trial judge who saw the witnesses,
heard their testimony, noted their demeanor on the
stand, their candor or uncandor, and was thus able
to measure their credibility. *Van Allen* v. *Sprague,*
206 Mich 116, 120; *Kwiatkowski* v. *Antonecki,* 329
Mich 32; *Robinson* v. *Belanger,* 332 Mich 657; *Kelley*
v. *Dodge,* 334 Mich 499; *Dillon* v. *Yankee,* 346 Mich
491.

This Court feels bound by the factual findings
made by the trial court with reference to the terms
of the oral contract and to the amounts found to be
due. It feels further bound to accept the trial court's
determination that plaintiff-appellee Reed was the
procuring cause with respect to the orders obtained
subsequent to the date of the alleged cancellation on
April 20, 1954.

Under the trial court's factual findings with ref-
erence to the contract, there can be no question in
applying the law to those facts of the ability of the
plaintiff-appellee to recover so far as the customer
orders are concerned prior to the cancellation date,
including the right to recover on the so-called Stude-
baker account, since by the assignment of Hunt and
wife to plaintiff-appellee of all of their right, title
and interest in and to the commissions on the Stude-
baker account, plaintiff-appellee was entitled to re-
cover the amount owing, if indeed, any amount was
owing.

In view of trial court's determination of the agree-
ment with reference to the distributor sales com-
missions, it is apparent that there is ample evidence
to support his finding that plaintiff-appellee was to

receive a commission on all distributor sales, the change of method in billing being made solely for the convenience of defendants-appellants. Defendants-appellants' recognition of this fact is disclosed by their forwarding notice of some of the distributor sales orders to plaintiff-appellee so that he might be able to bill the distributor directly for his commission.

One further question needs to be disposed of. Defendants-appellants, of their own volition, terminated the contract with plaintiff-appellee in April, 1954, as they had a legal right to do. American Law Institute, 2 Restatement, Agency, § 442; *O'Connor v. Hayes Body Corp.*, 258 Mich 280; *Powers & Company, Inc.*, v. *American Society of Tool Engineers*, 345 Mich 392.

Under the American Law Institute, 2 Restatement, Agency, § 451, it is provided:

"Unless otherwise agreed, upon the termination of the relationship, whether or not in breach of contract by either party, the principal:   *  *  *

"(b) is subject to liability to indemnify the agent for losses resulting to him after such termination from authorized transactions entered into before the termination, in accordance with the rules stated in Section 439."

Plaintiff-appellee claimed and was allowed commissions on sales made by defendants-appellants after the alleged termination of the contract and up to the time of suit, as is disclosed by the accounting. It would appear that the amount of the commissions up to the time of trial and after cancellation are not disputed. Defendants-appellants defend: solely with the claim that under their interpretation of the oral contract plaintiff-appellee was not to receive any commissions after termination. As previously indicated, the lower court made a finding of fact,

which this Court feels obligated to follow, to the effect that all orders whether sent in by writing by the plaintiff-appellee or received directly by the defendants-appellants were to have commissions paid. It would appear that the cancellation was made for the purpose of defendants-appellants receiving the benefit of the sales activities of plaintiff-appellee without payment of the commissions. It would further appear that the contract had therefore been breached and plaintiff-appellee was entitled to damages. Proof of the damages in this particular case is uncontested, unchallenged and undisputed by defendants-appellants as being the amount of the commissions. No claim of failure to mitigate the damages is alleged by defendants-appellants. It is apparent from an examination of the record in this case that the damages would be the amount of the commissions since plaintiff-appellee was put to no expense to obtain the orders.

The decree of the lower court is affirmed in its entirety, with costs in favor of plaintiff-appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.