944 F.2d 904
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Peter M. ANDRIES, Plaintiff-Appellant,
v.
EMHART INDUSTRIES, INC., a foreign corporation, formerly
d/b/a Emhart/Bostik Division, Defendant-Appellee.
 No. 90-2321.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1991.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and HOLSCHUH, District Judge.*
 PER CURIAM.
 
 
 1
 The issue presented in this appeal is whether the district court erred in entering summary judgment against a salesman who asserted a right to receive commissions on sales concluded after the termination of his employment with the defendant. Finding no error, we shall affirm the judgment.
 
 
 2
 * The plaintiff, Peter M. Andries, joined what came to be the Bostik Division of Emhart Industries, Inc., in 1977 as a salesman. He was assigned to work on the company's Ford Motor Company account. During the course of Andries' employment, Ford placed several multi-year purchase orders with Bostik.
 
 
 3
 In 1983 Bostik implemented a compensation plan under which members of its sales force were paid commissions and bonuses in addition to their basic salaries. An employee whose employment had been terminated was not entitled to post-termination commissions under this compensation plan.
 
 
 4
 Bostik's general manager met with Mr. Andries at the time of the plan's adoption and explained how commissions and bonuses would be calculated under the plan. Whether Mr. Andries would receive commissions after termination of his employment was not discussed. The subject was covered in the plan itself, but the record contains no indication that Mr. Andries actually saw the plan.
 
 
 5
 From time to time Bostik changed the commission rates that Mr. Andries and other sales personnel were to receive. Sales personnel were compensated under the rate schedule in effect at the time products were delivered to the customer, even if the purchase order for the sale had been procured when different commission rates were in effect.
 
 
 6
 In July of 1988 Mr. Andries was informed that his employment with Bostik would be terminated as a result of a reorganization. He learned at this time that he would not receive commissions on sales consumated subsequent to the termination, regardless of when the purchase orders for such sales had been executed. The termination became effective on December 20, 1988, and Mr. Andries was paid no commissions on sales concluded after that date.
 
 
 7
 Mr. Andries sued Bostik in the Wayne County (Michigan) Circuit Court, alleging in a two-count complaint that the company had broken an express promise to pay him post-termination commissions and that it had been unjustly enriched by reason of its refusal to pay such commissions.
 
 
 8
 Bostik removed the case to federal district court on diversity grounds. After discovery, the company filed a motion for summary judgment. Mr. Andries was then granted leave to amend Count I of his complaint to add an allegation that Bostik had, in violation of an express promise, paid him commissions based on the rates in effect at the time the product was delivered to the customer rather than at the time the purchase order was procured. Discovery was reopened, and Bostik subsequently filed a supplemental motion for summary judgment. The district court granted summary judgment for the company on all issues. On appeal, Mr. Andries challenges only the portion of the judgment that relates to Count I of the amended complaint.
 
 II
 
 9
 We review a grant of summary judgment de novo, viewing all facts and inferences in a light most favorable to the non-moving party. Pachla v. Saunders System, Inc., 899 F.2d 496, 498 (6th Cir.1990). This court must ask itself "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). A party seeking summary judgment meets its burden under Fed.R.Civ.P. 56 by " 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).
 
 
 10
 * Mr. Andries argues that there was a genuine issue as to whether Bostik expressly promised that he would receive post-termination commissions. We find this argument unpersuasive. Mr. Andries has produced no evidence of either a written or oral promise that he would receive post-termination commissions. He has conceded that he never broached the subject prior to 1988 because he did not anticipate leaving Bostik until his retirement. When the issue was discussed in July of 1988, Mr. Andries admits that Bostik made it clear that he would not be paid post-termination commissions. The uncontradicted affidavit of Bostik's general manager and the company's written compensation policy show that no Bostik salesperson was promised post-termination compensation, and no one received such compensation.
 
 
 11
 Nothing in Reed v. Kurdziel, 352 Mich. 287, 89 N.W.2d 479 (1958), requires us to reverse the decision of the district court. In Kingsley Associates, Inc. v. Del-Met Inc., 918 F.2d 1277, 1282 (6th Cir.1990), we summarized Reed as follows:
 
 
 12
 "In Michigan, a sales representative 'is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale.' Reed v. Kurdziel, 352 Mich. 287, 294, 89 N.W.2d 479, 483 (1958) (citations omitted).
 
 
 13
 * * *
 
 
 14
 * * *
 
 
 15
 Application of the 'procuring cause' doctrine depends on a determination of the intentions of the parties to the agency relation.
 
 
 16
 'The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretations, all the circumstances must be considered.'
 
 
 17
 Reed, 352 Mich. at 294, 89 N.W.2d at 482-83 (quoting Annotation, Right of Agent or Broker, Employed to Sell Personalty on Commission, to Commissions on Sale Made or Consummated by his Principal or Another Agent, 12 A.L.R.2d 1360, 1363 (1950))."
 
 
 18
 Under Reed, we must look to the agreement between the parties to determine whether Mr. Andries was entitled to post-termination commissions. As noted above, nothing in the record of this case manifests a mutual intent that commissions be paid on sales concluded following the termination of the salesman's employment.
 
 
 19
 Although there is no evidence that Mr. Andries saw a copy of Bostik's written compensation plan before July of 1988, he clearly knew that he was being paid according to a new plan from 1982 on. Mr. Andries does not claim that he was misled as to the contents of the plan or that the company denied him access to it, and we have no trouble concluding that the plan represented Mr. Andries' agreement with Bostik.
 
 B
 
 20
 The contention that Bostik expressly promised to pay Mr. Andries according to the commission schedule in effect at the time a purchase order was procured is not supported by the record. Again Mr. Andries has not been able to point to any agreement, written or oral, geared to the time of the purchase order. Bostik's written compensation plan, on the other hand, shows that commissions were to be based on completed sales, not purchase orders that might or might not result in sales:
 
 
 21
 "A commission ... will be paid on monthly dollar net sales volume at accounts assigned to the individual by Bostik for sales coverage, or for new business developed in the individual's territory. Net sales volume is actual gross dollar sales less all applicable returns and allowances, cash discounts, and freight out. The commission earnings for a given month's sales will be paid to the employee in the following month."
 
 
 22
 Under the plan, the event that triggers the paying of a commission is the actual shipment. Bostik's long-standing practice confirms that the written policy meant what it said; the commission rate used in practice was the rate in effect at the time of shipment. Finally, the cover memoranda that accompanied the commission rate revisions Mr. Andries received from time to time all stated that the rate revisions became effective when orders were shipped, not when they were procured.
 
 
 23
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 The Honorable John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation