No.  03-2354
File Name: 05a0665n.06
Filed:  August 5, 2005

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

MAX MUQTADIR, d/b/a FIRST QUALITY )
SALES & MARKETING, )
  )
  Plaintiff-Appellant, )
  ) ON APPEAL FROM THE
   v. ) UNITED STATES DISTRICT
  ) COURT FOR THE EASTERN
MICRO CONTACTS, INC., ) DISTRICT OF MICHIGAN
  )
  Defendant-Appellee. )

Before: **NELSON** and **BATCHELDER**, Circuit Judges, and **COLLIER**, District Judge.[*]

**DAVID A. NELSON**, Circuit Judge.  This appeal arises out of a dispute between a manufacturer and a sales representative over post-termination commissions.  The key question is whether contract modifications that had been proposed by the sales representative ever became effective, thereby obligating the manufacturer to pay additional commissions.  Applying a choice-of-law provision in the parties' original contract, the district court granted summary judgment to the manufacturer on the ground that the modifications were not effective under New York law.

_____

[*]The Honorable Curtis L. Collier, United States District Judge for the Eastern District of Tennessee, sitting by designation.

The sales representative argues on appeal, as he did in the district court, that the effectiveness of the contract modifications should be determined under Michigan law. We are satisfied that the contract was not effectively modified under the law of either Michigan or New York, and we shall affirm the challenged judgment on that basis.

I

The defendant, Micro Contacts, Inc., is a New York corporation that manufactures precision metal stampings and assemblies. The plaintiff, Michigan resident Max Muqtadir, was engaged by Micro Contacts to sell its products to customers in Canada, Michigan, and Indiana. Micro Contacts entered into a written sales representative agreement with Mr. Muqtadir in May of 1995.

The agreement set forth the following schedule of commissions: four percent of net sales of non-precious metal stampings and assemblies, four percent of net sales of precious metal stampings, and three percent of net sales of pins on bandoliers. Post-termination commissions were to be paid "on all orders received and accepted on or before the termination date and which are shipped . . . to customers within thirty days of the date of termination." The agreement provided that it should be construed in accordance with New York law and "may only be modified in a writing which is signed by both parties."

In March of 1998 Mr. Muqtadir wrote to Micro Contacts proposing certain modifications to the agreement. The proposal would have increased Muqtadir's commissions

to five percent of net sales of all Micro Contacts products, subject to one exception that is not at issue here. The proposed modifications would also have required Micro Contacts to pay post-termination commissions on all orders "which are dated or communicated to [Micro Contacts] prior to the effective date of termination, regardless of when such orders are shipped . . . ."

No one from Micro Contacts signed the document in which Mr. Muqtadir set forth his proposed modifications. Instead, in April of 1998, Micro Contacts' vice president of sales sent Muqtadir a counter-proposal. The new agreement proposed by Micro Contacts would have increased Mr. Muqtadir's commissions to five percent for sales of non-precious metal stampings and assemblies only. Micro Contacts' proposal retained the provision limiting post-termination commissions to orders shipped within 30 days of the termination date, but it provided for payment of additional commissions should the company put a direct salesman in Muqtadir's territory within six months of his termination.

Mr. Muqtadir did not sign the new agreement proposed by Micro Contacts. Nor did he sign a nearly identical agreement that was presented to him in February of 1999. Notwithstanding Mr. Muqtadir's failure to execute either of its proposed agreements, Micro Contacts paid commissions of five percent on Muqtadir's sales of non-precious metal stampings and assemblies beginning in January of 1999.

On November 28, 2001, Micro Contacts notified Mr. Muqtadir that it was terminating the sales representative agreement. In accordance with the provisions of the agreement,

Micro Contacts stated that it would pay commissions on all orders accepted before December 28, 2001, and shipped before January 28, 2002. Micro Contacts also offered to pay commissions on orders shipped before March 28, 2002, in exchange for Mr. Muqtadir's acknowledgment that he was owed no additional commissions.

In June of 2002 Micro Contacts tendered $17,911.51 to Mr. Muqtadir for orders shipped between January 29 and March 28, 2002. Mr. Muqtadir did not cash the check.

Instead, in January of 2003, Mr. Muqtadir sued Micro Contacts in federal district court, invoking the court's diversity jurisdiction. Muqtadir alleged that Micro Contacts had accepted his proposed contract modifications in March of 1998 and therefore owed him additional post-termination commissions. Muqtadir also asserted that he was entitled to relief under Michigan's Sales Representatives' Commissions Act, M.C.L. 600.2961, and Michigan's common-law "procuring cause" doctrine.

Mr. Muqtadir moved for partial summary judgment on the ground that Micro Contacts had admitted liability to the extent of $17,911.51, the amount previously tendered. Micro Contacts filed a cross-motion for summary judgment, arguing that the contract modifications on which Muqtadir based his claims had been rejected and thus could not have become effective.

After requesting supplemental briefing on the question of whether New York or Michigan law should govern the case, the district court granted Micro Contacts' motion for summary judgment. Mr. Muqtadir's motion was denied. The court held that the contractual

choice-of-law provision should be enforced and that, under New York law, the modifications proposed by Mr. Muqtadir in March of 1998 were not effective. The court held further that the Michigan statute and "procuring cause" doctrine are unavailing in an action governed by New York law. Finally, the court held that Mr. Muqtadir was not contractually entitled to the $17,911.51 tendered by Micro Contacts in June of 2002.

## II

In this timely appeal, Mr. Muqtadir argues that the district court erred in applying the law of New York. Alternatively, he argues that Micro Contacts should be estopped, under New York law, from denying that his proposed contract modifications became effective. We need not reach the question of whether it was error to apply New York law rather than Michigan law, because we conclude that Micro Contacts was entitled to summary judgment regardless of which state's law governs.

## A

Under New York law, "[a] written agreement . . . which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought . . . ." N.Y. Gen. Oblig. Law § 15-301(1). As we have seen, the 1995 sales representative agreement provided that it could not be modified except by a signed

writing, and Micro Contacts never signed the document setting forth Mr. Muqtadir's proposed contract modifications. As a matter of New York law, we believe, the proposed modifications had no effect and Muqtadir's breach-of-contract claim fails for that reason.

Mr. Muqtadir argues that Micro Contacts should be equitably estopped from invoking § 15-301(1). Muqtadir's theory is that by paying commissions of five percent on sales of non-precious metal stampings and assemblies, Micro Contacts lulled him into believing the modifications had been accepted. *Cf. Rose v. Spa Realty Associates*, 366 N.E.2d 1279 (N.Y. 1977) (where one party to a contract had "actively lulled" the other party "into thinking [an] oral modification had been accepted," the first party was equitably estopped from challenging the effectiveness of the modification).

The problem with this theory is that Muqtadir's modifications would have required Micro Contacts to pay five percent on sales of all of its products, with one exception. It was Micro Contacts' counter-proposal that called for commissions of five percent on sales of non-precious metal stampings and assemblies only. Because Micro Contacts' payments were not fully consistent with Mr. Muqtadir's proposal, we are not persuaded that the estoppel rule is applicable here.[1]

---

[1]Mr. Muqtadir asserts that he could have demonstrated the applicability of the estoppel rule had the district court given him an opportunity to take additional discovery. Muqtadir never asked the district court for such an opportunity, however, and he has not told us what relevant evidence he believes he could have discovered. In these circumstances, we cannot say that the district court erred in entering summary judgment when it did.

Mr. Muqtadir has never suggested that his causes of action under Michigan's Sales Representatives' Commissions Act and Michigan's common law "procuring cause" doctrine are viable if this case is governed by New York law. Accordingly, application of the law of New York properly results in judgment for Micro Contacts on all of Muqtadir's claims.

B

Mr. Muqtadir's claims do not fare any better if Michigan law is applied. In connection with his breach-of-contract claim, Mr. Muqtadir points out that Michigan courts will not enforce a contractual provision that requires contract modifications to be in writing. See, *e.g.*, *Zurich Insurance Co. v. CCR & Co.*, 576 N.W.2d 392, 394 (Mich. App. 1997), *appeal denied*, 583 N.W.2d 902 (Mich. 1998). But any modification, written or oral, must be agreed upon before it can become effective under Michigan law. See *Quality Products & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 257-58 (Mich. 2003) (holding that a contract cannot be modified except by mutual assent). Here the undisputed evidence shows that Micro Contacts did not agree to Mr. Muqtadir's proposed modifications; on the contrary, it rejected the proposal by making a counter-proposal. See *Harper Building Co. v. Kaplan*, 52 N.W.2d 536, 538 (Mich. 1952) (holding that a counter-proposal is a rejection of the original proposal). There was thus no effective modification of the 1995 agreement.[2]

---

[2]At oral argument, Mr. Muqtadir's lawyer maintained that Muqtadir accepted the new agreement offered to him by Micro Contacts in April of 1998 and February of 1999. That proposition was never advanced in the district court, where the sole theory of Mr. Muqtadir's

Because the 1995 sales representative agreement was not modified to require payment of the post-termination commissions that Mr. Muqtadir seeks, Michigan's Sales Representatives' Commissions Act cannot provide a basis for relief. The purpose of the Act is to ensure that post-termination commissions are fully and promptly paid when due. See M.C.L. 600.2961; *Howting-Robinson Associates, Inc. v. Bryan Custom Plastics*, 65 F. Supp.2d 610, 613 (E.D. Mich. 1999). The Act does not expand the scope of contractual obligations to pay post-termination commissions. See *APJ Associates, Inc. v. North American Philips Corp.*, 317 F.3d 610, 616 (6th Cir. 2003). Where a manufacturer has paid all commissions that are due under a contract, a refusal to pay additional commissions does not violate the Act. See *id.*

Mr. Muqtadir is not entitled to recovery under Michigan's "procuring cause" doctrine either. Under this doctrine, a sales representative is entitled to commissions, including post-termination commissions, on sales that he generated. See *Reed v. Kurdziel*, 89 N.W.2d 479, 482-83 (Mich. 1958). But the doctrine applies only where the parties' contract is silent. See *APJ Associates*, 317 F.3d at 616. It cannot alter the terms of an agreement as to the payment

---

contract claim was that Micro Contacts had accepted the modifications proposed by Muqtadir in March of 1998. Nor was the proposition advanced in Mr. Muqtadir's appellate brief. Accordingly, we will not consider it. See *White v. Anchor Motor Freight, Inc.*, 899 F.2d 555, 559 (6th Cir. 1990) ("This court will not decide issues or claims not litigated before the district court"); *Priddy v. Edelman*, 883 F.2d 438, 446 (6th Cir. 1989) ("We normally decline to consider issues not raised in the appellant's opening brief").

of post-termination commissions. *Cf. Reed*, 89 N.W.2d at 482-83 ("The relationship between agent or broker and principal [is] a contractual one . . . .") (internal quotation marks omitted).

All of Mr. Muqtadir's claims depend on the effectiveness of his proposed modifications. Because the modifications were not effective, Micro Contacts is entitled to judgment as a matter of law.

**AFFIRMED**.