MILITZER v KAL-DIE CASTING CORP

1. BROKERS—CONTRACTS—COMMISSIONS—RENEGOTIATION.

An oral contract which gave plaintiff a 5% commission on sales to every customer procured by plaintiff for defendant could not be unilaterally renegotiated by defendant to deny plaintiff the commission agreed upon after the account had been obtained.

2. BROKERS—CONTRACTS—COMMISSIONS—REORDERS.

A plaintiff is entitled to a commission on all sales to customers he procured for defendant occurring before he was fired by defendant, and to all reorders either before or after he was fired on all sales which were procured by plaintiff and first sold before the date he was fired, where the commission agreement was for a 5% commission on all sales to customers which plaintiff procured, not on sales he completed.

3. JUDGMENT—INTEREST—DISCRETION.

Judgment interest is statutory and mandatory and is not a discretionary matter with the trial judge; the purpose of the statute, to compensate for loss of use of funds, would be thwarted otherwise (MCLA 600.6013).

Appeal from Kalamazoo, Raymond W. Fox, J. Submitted Division 3 May 9, 1972, at Grand Rapids. (Docket No. 11426.) Decided June 26, 1972. Leave to appeal denied, 388 Mich 789.

Complaint by Donald Militzer against Kal-Die Casting Corporation for sales commission. Judgment for defendant. Plaintiff appeals. Reversed and remanded with instructions.

*Stapleton & Adams, P. C.,* (by *Charles E. Ritter),* for plaintiff.

*Warner, Norcross & Judd* (by *Roger M. Clark),* for defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 12 Am Jur 2d, Brokers §§ 246, 247.
[3] 45 Am Jur 2d, Judgments § 59.

Before: R. B. BURNS, P. J., and HOLBROOK and O'HARA,* JJ.

R. B. BURNS, P. J. The problem presented by the facts in this appeal is one which frequently occurs within plaintiff's occupation.

Plaintiff, a manufacturer's representative, began the solicitation, on behalf of various manufacturers, of Eaton, Yale & Towne Company as early as 1959.[1] In 1965 defendant manufacturer agreed, orally, to pay plaintiff a 5% commission on all sales to customers he procured in western Michigan and it was understood by both parties at this time that plaintiff was to be particularly aggressive in soliciting Eaton.

Eaton's account was obtained and became so substantial that Kal-Die had to enlarge in-plant facilities and buy new equipment. Indeed both parties anticipated that sales to Eaton would run upward to a million dollars or more.[2]

After the Eaton account was obtained and after it was anticipated that the account would be highly profitable defendant decided to make an "adjustment" to plaintiff's 5% commission. A new commission scale which provided for a 5% commission up to $400,000 in sales per year, 2-1/2% for sales between $400,000 and $750,000, 1-1/2% for sales between $750,000 and $1,000,000, and nothing for sales in excess of $1,000,000, was proposed to plaintiff. Plaintiff, at least initially, vehemently rejected the new proposal, but upon giving the matter more thought and after consulting with his

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Plaintiff was not representing defendant at the early date.

[2] Defendant's general manager testified that in November of 1968 the Eaton account represented 45% of Kal-Die's total sales.

attorney, plaintiff walked into McCullough's office[3] and entered into an oral arrangement which at trial level and now, on appeal, presents a factual controversy. Defendant contends that plaintiff unconditionally accepted only that portion of the schedule which gave him 5% up to $400,000 and that he rejected the remainder of the proposal but felt no need to argue about it since sales to Eaton had not yet exceeded the $400,000 level.

The trial court accepted plaintiff's version of the meeting. We do not ordinarily disturb the findings of the trial judge in an equity case unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge. *SBS Builders Inc v Madison Heights,* 38 Mich App 1 (1972).

The trial court's belief in plaintiff's version of the meeting was not significant, however, since the trial court ultimately held that defendant was entitled to "renegotiate the terms of plaintiff's employment"[4] and that the sliding scale was reasonable under the circumstances.

The trial court justified the defendant's right to renegotiate upon events which took place subsequent to plaintiff's successful efforts to bring the representatives of Eaton into contact with those of the defendant. The evidence clearly shows, and the trial court so found, that defendant's sales manager, and not plaintiff, played the major role in procuring orders from Eaton after plaintiff provided the initial orders of business. Since plaintiff

---

[3] Mr. McCullough was Kal-Die's general manager at this time and had sufficient authority to negotiate plaintiff's contract. McCullough had presented plaintiff with the sliding scale arrangement.

[4] The trial court's use of the word "renegotiate" may have been a little mild in light of McCullough's testimony that defendant's imposition of the sliding scale was final and nonnegotiable.

was playing a minor role in the Eaton account, the trial court felt that imposition of the sliding scale was fair.

If plaintiff's contract had called for a 5% commission for every "sale" made instead of for every "customer" procured, then renegotiation in light of shared successes would have been justified as "fair dealing" under the rule in *Reed v Kurdziel*, 352 Mich 287, 294 (1958). However, the 5% commission on sales was conditioned on "customer" procurement[5], not sales completed.

McCullough testified that plaintiff was to receive 5% on everything sold to Eaton after plaintiff had procured Eaton for a customer even if plaintiff had done nothing in selling a particular part. This was a policy which defendant practiced with all of its representatives. The evidence clearly reveals that plaintiff brought the Eaton people in and indeed was directly responsible for the first two part orders. Only after this initial contact did the defendant assign its sales manager as a technical "assistant" to the Eaton account.

If defendant had desired to limit plaintiff's commission in terms of time or amount it could have done so, preferably in writing, in the original agreement. Instead it proposed a new arrangement after the Eaton account had been obtained and after much of plaintiff's time and energy had already been expended.

[5] As stated in *Reed v Kurdziel*, 352 Mich 287, 294 (1958), the plaintiff's right to commissions depends upon interpretation of his understanding with the defendant:

"The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all the circumstances must be considered. * * * This rule is recognized and stated in the American Law Institute, 2 Restatement, Agency, § 449, Comment a."

The defendant's policy against written agreements with its manufacturing representatives seems to facilitate "renegotiation", but it cannot be permitted to deny its representatives the compensation agreed upon. Plaintiff is entitled, and we so hold, to a 5% commission on all Eaton sales occurring on or before plaintiff's termination date.[6] In addition plaintiff is entitled to a 5% commission on all reorders, occurring either before or after his termination, on parts which were first sold on or before that date.

A question of judgment interest remains to be answered. MCLA 600.6013; MSA 27A.6013 provides in part:

"Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 5% per year * * * ."

Since the judgment interest statute seems to mandate an interest award, plaintiff claims it was error for the trial court to exercise discretion and withhold interest on that portion of the judgment which represented the amount of commissions which defendant had always been willing to pay.[7] Defendant, noting the equitable nature of this action, claims that *Cyranoski v Keenan,* 363 Mich 288 (1961), and *Taines v Munson,* 19 Mich App 29 (1969), gives the trial court discretion in the allowance of interest. Defendant fails to distinguish between judgment interest and prejudgment interest. The former is statutory and mandatory, the

---

[6] Plaintiff was terminated on November 21, 1968.

[7] Defendant's tender of commissions based upon the sliding scale was not accepted. It was not accepted by plaintiff out of fear that such acceptance would prejudice his rights under the original commission agreement.

latter an element of damages and discretionary.[8] In the *Cyranoski* case the Court was clearly addressing itself to nonstatutory interest as an element of damages. In the *Taines* case the Court was concerned with both types of interest and it is not clear which type it was referring to when it said (p 42):

"However, in an accounting, a court of equity may, in its discretion based on the equities presented, 'allow or withhold interest as, under the circumstances of the case, seems equitable and just, except in cases where interest is recoverable as a matter of right' *Cyranoski v Keenan,* 363 Mich 288, 295 (1961)."

In any event *Cyranoski* does not support the proposition that statutory judgment interest is a discretionary matter for the trial court. Indeed such a rule does not exist even at common law since at common law judgments did not carry interest. *Schroeder v Boyce,* 127 Mich 33 (1901).[9] The purpose of the judgment interest statute is to compensate for loss of use of funds. *Waldrop v Rodery,* 34 Mich App 1 (1971). This purpose would be thwarted if we permitted the trial court to derogate from the plain statutory mandate that interest "shall be allowed" on a money judgment.

Reversed and remanded for proceedings consistent with this opinion. Costs to plaintiff.

All concurred.

---

[8] *Vannoy v City of Warren,* 26 Mich App 283 (1970); *Banish v Hamtramck,* 9 Mich App 381 (1968); *Swift v Dodson,* 6 Mich App 480 (1967). See also *Glick v White Motor Co* 317 F Supp 42 (ED Pa, 1970).

[9] See also, *Motyka v Detroit, G H & M R Co,* 260 Mich 396 (1932) and *Davis v Howard,* 14 Mich App 342 (1968).