Joseph **FERNANDEZ**

v.

**POWERQUEST BOATS, INC., a Michigan corporation, f/k/a Power Play Boats, Inc.**

**No. 1:90–CV–709.**

United States District Court, W.D. Michigan, S.D.

Aug. 13, 1992.

Harold S. Sawyer, Grand Rapids, Mich., for plaintiff.

Mark R. Smith, Sandra S. Hamilton, Grand Rapids, Mich., for defendant.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This case presents an action by a sales representative to recover commissions with respect to sales consummated after he was terminated. Both parties move for summary judgment, agreeing that the relevant facts are not disputed and that the matter is ripe for disposition as a matter of law. The Court has reviewed the briefs and other matters presented, heard arguments on August 3, 1992, and concludes that defendant is entitled to summary judgment.

## I. FACTUAL BACKGROUND

In 1986, plaintiff Joseph Fernandez entered into an oral agreement with defendant Powerquest Boats, Inc. (manufacturer of power pleasure boats) to serve as sales representative in a territory including parts of the northeast coast from Maine to Virginia. As compensation, plaintiff was to receive commissions equalling 4% of gross boat sales made by Powerquest dealers recruited and serviced by plaintiff. The agreement was undisputedly indefinite as to duration and as to entitlement to commissions on sales completed after plaintiff's termination. Plaintiff was terminated on November 23, 1988, purportedly because of poor performance. He was paid all commissions due him for sales completed prior to termination.

In this action, plaintiff does not challenge the rightfulness of his discharge, conceding the relationship was terminable at will. Rather, plaintiff seeks payment of 4% commissions on all sales of boats made by Powerquest since November 23, 1988, to dealers he recruited and serviced. Plaintiff claims commissions totalling $42,939.24 through July 31, 1991. Plaintiff further seeks an accounting for each year thereafter until further order of the Court. Defendant Powerquest contends plaintiff's entitlement to commissions ended when he was terminated.

## II. SUMMARY JUDGMENT STANDARD

The motions for summary judgment ask the Court to evaluate the factual support for the parties' positions. The Court must look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct.

2505, 2512, 91 L.Ed.2d 202 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247–248, 106 S.Ct. at 2510 (emphasis in original). If the movant carries its burden of showing there is an absence of evidence to support a claim or defense, then the opponent must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). An issue of fact is "genuine" if the evidence is such that a reasonable jury could find for the opponent. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Id.* A complete failure of proof concerning an essential element of a claim or defense necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett, supra,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### III. DUTY TO PAY POST-TERMINATION COMMISSIONS

The parties agree that the oral "contract" was silent as to entitlement to post-termination commissions. (See Kevin Hirdes Affidavit, ¶ 4; Fernandez Dep. Tr., pp. 28–30). The parties also agree that the governing law on this issue is set forth in *Reed v. Kurdziel,* 352 Mich. 287, 293–95, 89 N.W.2d 479 (1958):

An examination of the law with reference to commissions allowed agents or brokers seems to indicate that it is difficult to determine a set line of decisions, particularly with reference to the right of an agent with an exclusive agency to recover commissions on sales made where he is the procuring cause. However, when they are viewed as a whole and brought into proper focus, they disclose the law applicable to the question is well settled and that the seeming confusion results from the application of that law to the particular facts of the specific cases in question. 12 ALR2d 1360, 1363, states as follows:

"The relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent *depends upon the intention of the parties and the interpretation of the contract of employment and that, as in the other cases involving interpretation, all the circumstances must be considered....* This rule is recognized and stated in the American Law Institute, 2 Restatement, Agency, § 449, Comment a."

It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agent's or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. *In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale. Reade v. Haak,* 147 Mich. 42 [110 N.W. 130 (1907)]; *Case v. Rudolph Wurlitzer Co,* 186 Mich. 81 [152 N.W. 977 (1915)]; *MacMillan v. C & G Cooper Co.,* 249 Mich. 594 [229 N.W. 593 (1930)]. In Michigan the rule goes further to provide if the authority of the agent has been cancelled by the principal, the agent would nevertheless be permitted to recover the commission if the agent was the procuring cause. *Heaton v. Edwards,* 90 Mich. 500 [51 N.W. 544 (1892)]; *McGovern v. Ben-*

*nett*, 146 Mich. 558 [109 N.W. 1055 (1906)]; *MacMillan v. C & G Cooper Co, supra.*

Quoted in *Butterfield v. Metal Flow Corp.*, 185 Mich.App. 630, 635–36, 462 N.W.2d 815 (1990) (emphasis added).

■ Thus, it is agreed that plaintiff's entitlement to post-termination commissions depends upon the parties' intentions as determined from the contract and other circumstances. Inasmuch as the oral agreement is silent on the question, defendant Powerquest contends it is clear the parties contemplated no such right. Plaintiff, on the other hand, urges the Court to construe the contract's silence as evidence that the parties intended that plaintiff would receive sales commissions *ad infinitum* for sales to dealers that he had recruited and serviced. Neither party has made any circumstantial showing to support its proffered interpretation of the agreement.

■ On the face of things, defendant Powerquest has made the requisite showing, in support of its motion for summary judgment, that there is an absence of evidence tending to show the parties intended that plaintiff would receive post-termination commissions. Plaintiff has not rebutted this showing factually by affidavit, deposition or otherwise. Indeed, plaintiff's deposition testimony indicates essentially that the only basis for his claim is his lawyer's representation as to the state of Michigan law. (Dep. Tr., pp. 32–38).[1] Consistent therewith, plaintiff's argument in support of his motion for summary judgment and in opposition to defendant's is a legal one.

■ To be sure, whether there is or is not a genuine issue of material fact must be determined under the governing substantive law. *Anderson, supra*, 477 U.S. at 248, 106 S.Ct. at 2510. The standards enunciated in *Reed, supra*, have been interpreted in relevant respect as follows:

Where the contract is silent, the agent is entitled to recover a commission on a sale, whether or not he personally concluded it, only where it can be shown that his efforts were the "procuring cause."

*Roberts Associates, Inc. v. Blazer Int'l Corp.*, 741 F.Supp. 650, 652 (E.D.Mich. 1990). In other words, where the contract and other circumstances offer no guidance as to the parties' intentions, a duty to pay post-termination commissions may be implied-at-law to enforce notions of "fair dealing" and prevent the principal from unfairly taking advantage of the agent's services. *Reed, supra*. By imposing the duty upon the principal only with respect to sales as to which the agent's efforts were the "procuring cause," the Michigan law is designed to yield fair results for the principal as well as the agent.

Attached to plaintiff's motion for summary judgment is a listing of 39 post-termination boat sales to northeast territory dealers. No information is provided as to the extent of plaintiff's participation in the negotiations leading to these sales. Plaintiff argues, however, that inasmuch as there was no northeast territory and no Powerquest dealers there before he began working as sales representative in 1986, his efforts were directly or indirectly the procuring cause of each sale.

Such an expansive definition of "procuring cause" has been rejected. In *Roberts Associates, supra*, the court observed that Michigan cases interpret the concept of procuring cause quite narrowly. 741 F.Supp. at 652–53. The court observed that "where the agent does not participate in the negotiation of a given contract of sale with a customer, he is not the procuring cause, even though the agent may have originally introduced the customer to the principal." *Id.* at 653. Echoing the determination of an unpublished Sixth Circuit ruling, *William Kehoe Associates v. Indiana Tube Corp.*, 891 F.2d 293 (6th Cir.1989), the court concluded the procuring cause doctrine protects acquisition of

---

1. The deposition testimony includes discussion of plaintiff's impression that there is an industry practice or standard providing for payment of post-termination commissions. Plaintiff admitted, however, that his impression is vague and that he has no evidence of this practice or standard.

orders, not acquisition of customers. *Id.* The court expressly rejected the construction of the procuring cause doctrine here urged by plaintiff, distinguishing the decision relied upon by plaintiff, *Militzer v. Kal–Die Casting Co.*, 41 Mich.App. 492, 200 N.W.2d 323 (1972).

In *Militzer*, the Michigan Court of Appeals upheld entitlement to post-termination commissions even where the efforts of the plaintiff manufacturer's representative were *arguably* not the procuring cause of subsequent sales. The defendant Kal–Die Casting had orally agreed to pay the plaintiff a 5% commission on all sales to customers he procured in western Michigan. It was understood that the plaintiff was to be particularly aggressive in soliciting Eaton. After the plaintiff, through expenditure of "much time and energy" had obtained the Eaton account and the first two part orders, Kal–Die attempted to change the contractual arrangement and assigned a sales manager to the Eaton account. The plaintiff was terminated and sued to recover commissions, in accordance with the original agreement, on all sales to Eaton both before and after his termination.

The Court of Appeals held the plaintiff was entitled to commissions on all Eaton sales occurring before termination, in accordance with the parties' agreement. As to post-termination sales, however, he was held entitled to commissions only on sales which constituted reorders of parts first ordered before his termination. That is, notwithstanding the open-ended terms of the parties' agreement, the *Militzer* court did not hold the plaintiff was forever entitled to commissions on all sales of parts to Eaton. It restricted the award of post-termination commissions to those sales with respect to which the plaintiff's efforts were the "procuring cause," not in the narrow sense described in *Roberts Associates,* but in the broad sense which had been implicitly recognized in the parties' agreement.

Viewed in the light of the *Roberts Associates* analysis, the *Militzer* expansion of "procuring cause," ostensibly to serve the equities of the case, is questionable. Yet, even in *Militzer*, entitlement to post-termination commissions was deemed limited. . . . limited by the notion that the sales representative's recovery must be commensurate, in some manner, with his efforts.

Here, plaintiff Fernandez has been paid full commissions on all sales to northeast territory dealers occurring before his termination. In addition, he seeks full commissions on all post-termination sales. However, neither he nor defendant has suggested any means of limiting post-termination commissions so as to reasonably compensate him while observing notions of fair dealing for both parties. The present facts do not lend themselves to the sort of "reorder" limitation applied in *Militzer*. The 39 post-termination orders of power pleasure boats are not in the nature of reorders of fungible goods.

Further distinguishing the present case from *Militzer* is plaintiff's promise, in consideration of receiving the agreed to 4% commission, to not only recruit dealers in the northeast territory, but also to service them. In *Militzer*, the plaintiff had, at the time of termination, fully performed, through securing the Eaton account, the condition precedent to entitlement to limited post-termination commissions. Here, plaintiff Fernandez's performance of the conditions precedent to payment of ongoing commissions, recruitment *and* servicing of dealers, was not fully completed and ceased at the time of termination.

Under these circumstances, the Court concludes that application of the traditional, narrow procuring cause doctrine described in *Roberts Associates* is appropriate and just. The *Roberts Associates* ruling is not, of course, binding upon this Court, but it contains an excellent discussion of Michigan law, is well-reasoned, and is persuasive. Like Judge Avern Cohn in the Eastern District of Michigan, this Court is satisfied that the Michigan Supreme Court would adopt the narrow interpretation of the procuring cause doctrine if called upon to do so. *Roberts Associates,* 741 F.Supp. at 653. Accordingly, the Court concludes that plaintiff is entitled to post-

termination commissions only for sales with respect to which his efforts, in the form of customer servicing or negotiations, were the procuring cause.

Because no evidence has been presented by either party concerning plaintiff's involvement with the 39 post-termination boat sales, it would appear that genuine issues of material fact remain. However, the Court's interrogation of counsel during the hearing on August 3, 1992, pursuant to Fed.R.Civ.P. 56(d), revealed that plaintiff is not prepared to offer proof that his efforts were the procuring cause of any of the 39 sales. Plaintiff's counsel made it clear that the claim of entitlement to post-termination commissions is based entirely on the theory that plaintiff's initial recruitment of the dealers in the northeast territory makes him, ipso facto, the procuring cause of all subsequent sales to those dealers. Counsel further made it clear that this case is ripe for disposition as a matter of law based on the present record.

Based on this record, there being no evidence that plaintiff's efforts were the procuring cause, as defined in *Roberts Associates*, of any sales of Powerquest boats to northeast territory dealers after his termination, the Court concludes there is no genuine issue as to any material fact and defendant is entitled to summary judgment. *Celotex, supra*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53 (a complete failure of proof concerning an essential element of a claim renders all other facts immaterial).

In reaching this conclusion, the Court emphasizes that it is enforcing the implied-at-law "procuring cause" doctrine, as it has evolved in Michigan law to secure fairness for both parties where they have failed to demonstrate a different intention. The result might well have been different had the parties discussed and reached an agreement as to post-termination commissions. In the absence of such an agreement, it is for the Court not to renegotiate the parties' contract, but merely to apply the law to enforce the agreement that they reached. This the Court has done.[2]

Accordingly, defendant's motion for summary judgment will be granted; plaintiff's cross-motion for summary judgment will be denied. An order consistent with this opinion shall issue forthwith.

---

2. This result renders evaluation of defendant's    statute of frauds defense unnecessary.