980 F.2d 729
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JACK PEDDIE AND ASSOCIATES, INCORPORATED, Plaintiff-Appellant,
v.
WHITMOR MANUFACTURING COMPANY, INC., Defendant-Appellee.
 No. 92-1005.
 United States Court of Appeals, Sixth Circuit.
 Dec. 2, 1992.
Order on Petition for Rehearing and Rehearing En Banc;
Decision Amended Jan. 22, 1993.
 
 Before KENNEDY and MILBURN, Circuit Judges, and POTTER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 In this diversity action, Jack Peddie and Associates, Inc. ("Peddie") appeals the district court's grant of summary judgment to defendant Whitmor Manufacturing Co., Inc. ("Whitmor") in plaintiff's action alleging breach of contract under Michigan law for failure to pay commissions allegedly owed to plaintiff from sales made after plaintiff was terminated as Whitmor's sales representative.
 
 
 2
 On appeal, the issue is whether the district court erred in determining that the contract between plaintiff and defendant which provides for commissions on "all goods shipped" meant that plaintiff was entitled to commissions only on those goods shipped before its termination as defendant's sales representative, regardless of whether plaintiff procured the customer for defendant or procured the sale of the goods shipped. For the reasons that follow, we reverse.
 
 I.
 
 3
 Plaintiff Peddie is a manufacturer's representative, and Jack Peddie is the president, director, and, with his wife, the sole shareholders of Jack Peddie and Associates, Inc. Defendant Whitmor is a manufacturer of vinyl storage products such as garment bags. Pursuant to a one-page written sales contract which became effective May 17, 1982, Peddie became Whitmor's commissioned sales agent to K-Mart. This contract provides in relevant part:
 
 2. Territory: K-Mart Account
 
 4
 * * *
 
 
 5
 * * *
 
 
 6
 The Rates of Commission are based on Net amount billing less freight, discounts, advertising, etc., if any, on all goods shipped.
 
 
 7
 All orders taken and received will be subject to acceptance by Whitmor Mfg. Co., Inc.
 
 
 8
 You will [sic] paid commission on a monthly basis on or about the 27th of the month following shipments. A statement listing all the shipments on which you have earned commissions will also be enclosed along with your remittance.
 
 
 9
 We agree to supply you with samples of merchandise which shall be used by you as a sales [sic] samples, but will continue to be the property of Whitmor and in the case of termination of this agreement, such samples will be returned in good condition.
 
 
 10
 This letter of agreement may be terminated by either party by notice in writing.
 
 
 11
 This agreement may be modified as may be necessary by an exchange of letters, agreed to and signed by both parties.
 
 
 12
 J.A. at 21 (emphasis added). The agreement also provided that a 5 percent commission would be paid on all goods shipped. The commission was later reduced to 3 percent and this is not a subject of contention in this case. This contract was prepared by Whitmor. It was signed by Paul DePinto, Vice-President of Whitmor, and Jack Peddie.
 
 
 13
 Both parties agree that there were no discussions or negotiations regarding the sales contract except that Jack Peddie asked DePinto in a telephone conversation what the commission rate was and DePinto informed him it would be 5 percent. In particular, there was no discussion regarding the payment or nonpayment of commissions after termination of their contract. Defendant simply sent plaintiff the sales contract which Jack Peddie signed without further discussion or negotiation. Nor did the contract enumerate Peddie's responsibilities towards the K-Mart account. However, Jack Peddie in his deposition discussed what he believed were Peddie's responsibilities in regard to this contract with Whitmor. Jack Peddie stated he believed Peddie had an ongoing responsibility to "keep abreast of what's going on." J.A. 359. This included trying to have Whitmor's product featured in K-Mart's promotions and advertising, keeping abreast of Whitmor's competition, negotiating price changes, becoming involved in problems with quality control, shipping, and inventory, becoming involved in product design changes, and trying to influence the K-Mart buyer on where the Whitmor products would be placed in the store.
 
 
 14
 Within four months of executing the contract, Jack Peddie scheduled a meeting with the appropriate K-Mart buyer, Mr. DePinto, and himself. At the conclusion of this meeting, DePinto had agreed to K-Mart's terms. However, the K-Mart buyer had not made a final decision about whether to purchase Whitmor's products. Within a month after this meeting, the K-Mart buyer decided to purchase Whitmor's products. This initial sale to K-Mart, which occurred in the spring of 1983, consisted of a 4-piece ensemble comprised of a dress bag, a 20-pocket shoe bag, an 18-section shoe file, and a 10-shelf sweater accessory bag. Defendant's products became "stock items," which means they were to be regularly stocked at all K-Mart stores nationwide.
 
 
 15
 At K-Mart, once the initial decision to purchase is made by the buyer, the amount of future shipments, the timing of these shipments, and the location of the shipments are coordinated through a "reorder buyer" to maintain adequate supplies to meet consumer demand. The buyer is not involved in this process to keep the stores stocked with the agreed upon product.
 
 
 16
 The ensemble which K-Mart initially purchased bore a visual pattern called "Rambling Rose." The pattern or design on the ensemble changes from time to time to meet consumer taste. The pattern which was being used prior to and as of plaintiff's termination on July 2, 1990, was called "Pink Dahlias." This pattern was introduced and sold to K-Mart through and with the sales effort of plaintiff in conjunction with the efforts of Whitmor executives. The product bearing the "Pink Dahlias" pattern continued to be shipped to K-Mart through April of 1991 and has since been replaced by a pattern called "Patchwork Floral." Plaintiff does not claim that it solicited the sale of the "Patchwork Floral" pattern to K-Mart.
 
 
 17
 In addition to the 4-piece ensemble, plaintiff also solicited K-Mart on behalf of Whitmor to purchase Whitmor's line of large storage items which are called "Jumbo." This "Jumbo" line of products, bearing the same pattern, continued to be shipped to K-Mart at least through March of 1991.
 
 
 18
 Furthermore, immediately following plaintiff's termination, Whitmor began shipping a 4-piece ensemble to K-Mart bearing a pattern called "Windswept." The "Windswept" pattern was a special promotion which was shipped to K-Mart in addition to the "Pink Dahlias" pattern. This pattern was introduced and sold to K-Mart prior to plaintiff's termination, and according to plaintiff, it participated in the discussions, negotiations, quotations, and other presale activities directed at the sale of this pattern to K-Mart.
 
 
 19
 Defendant Whitmor terminated plaintiff as its sales representative by letter effective July 2, 1990. Thereafter, Whitmor unilaterally decided it would pay Peddie commissions on all goods shipped to K-Mart for a thirty-day period following July 2, 1990.
 
 
 20
 According to Whitmor, Peddie was discharged for poor performance. However, Jack Peddie insists that Whitmor discharged Peddie after he refused to sign a new contract which would have specifically provided that Peddie would be paid commissions only on those shipments made to K-Mart while the agreement was in effect.
 
 
 21
 Plaintiff Peddie filed its complaint in district court on November 19, 1990, alleging that defendant Whitmor breached its contract with Peddie by failing to pay commissions due it. Defendant then filed a counterclaim alleging that Peddie had breached the contract by "failing to use its due care, diligence, good faith and best efforts to procure and service sales of Whitmor products to K-Mart." J.A. 43.
 
 
 22
 On September 19, 1991, the district court granted defendant's motion for summary judgment. Upon reconsideration, the district court adhered to its earlier decision and on November 25, 1991, entered judgment in favor of defendant Whitmor. In addition, on the same date, the district court also granted defendant Whitmor's motion to dismiss its counterclaim without prejudice. This timely appeal followed.
 
 II.
 A.
 
 23
 We review a district court's grant of summary judgment de novo. See Brooks vs. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Moreover, we must consider the evidence in the light most favorable to the nonmoving party. Boyd v. Ford Motor Co., 948 F.2d 283, 285 (6th Cir.1991), cert. denied, 112 S.Ct. 1481 (1992). In addition, we review a district court's interpretation of state law de novo. Salve Regina College v. Russell, 111 S.Ct. 1217, 1221 (1991).
 
 B.
 
 24
 Plaintiff sets forth two theories in order to recover commissions on reorders placed by K-Mart after plaintiff was terminated as Whitmor's representative. Specifically, plaintiff seeks commissions on all reorders of the 4-piece ensemble with the "Pink Dahlias" pattern and the "Jumbo" storage items which were sold after termination of the agreement between plaintiff and defendant. Plaintiff does not claim that defendant failed to pay any commissions due before it was terminated.
 
 
 25
 Plaintiff's first theory is the customer procurement theory. Plaintiff argues that it was hired to procure K-Mart as a customer, which it did, and thereafter it was entitled to commissions on all reorders, even those placed post-termination, where the reorders were for products initially sold to K-Mart during the time that plaintiff's agreement with defendant was in effect. Plaintiff's second theory is the sales procurement theory. Under this theory, plaintiff argues that it is entitled to commissions on all reorders of Whitmor products sold to K-Mart where plaintiff initially procured the sale of those items. According to plaintiff, under either theory, it is entitled to a 3 percent commission on all reorders of the "Pink Dahlias" 4-piece ensemble and the "Jumbo" storage items placed after its termination as defendant's representative.
 
 
 26
 The district court determined that plaintiff was not entitled to commissions on any sales or reorders of products occurring after termination of the agreement. In reaching its decision, the district court compared this case to Roberts Associates, Inc. v. Blazer International Corp., 741 F.Supp. 650 (E.D.Mich.1990). In Roberts, the written contract at issue provided that the plaintiff, a manufacturer's representative, would be paid 5 percent commission on specific items "[it] may sell" to certain accounts. The contract did not specify an arrangement for the payment or nonpayment of commissions upon termination of the contract. However, the Roberts court determined that the plaintiff could recover a commission on sales occurring after termination of the contract where it could show that its efforts were the "procuring cause" of the sale. Id. at 652. The Roberts court also determined, and the district court in this case noted, that a sales representative cannot collect commissions on "renewals" unless the contract expressly provides for this arrangement. Id. at 653.
 
 
 27
 In stating that the Roberts case was distinguishable from the present case, the district court held that the contract in this case was unambiguous and did not provide plaintiff commissions on its sales, but rather "on all goods shipped" to K-Mart only during the period in which the contract was in effect. The district court noted that the contract expressly provided for the termination of the contract by either party upon written notice. The district court further determined that because the contract referred to "goods shipped" and not "sales," the procuring cause doctrine did not apply as it did in Robert. The district court interpreted the contract to mean that it is "entirely irrelevant who was responsible for convincing K-Mart to buy Whitmor products" because Peddie would be entitled to commissions regardless of who made the sale. J.A. 27. The district court noted that the contract provided no express terms for the payment of commissions upon termination and that the parties agreed that they did not discuss this issue.
 
 
 28
 In Reed v. Kurdziel, 89 N.W.2d 479, 482-83 (Mich.1958), the Supreme Court of Michigan set forth the basic guidelines to consider when interpreting a contract between an agent and his principal:
 
 
 29
 [T]he relationship between agent or broker and principal being a contractual one, it is immediately apparent that whether an agent or broker employed to sell personalty on commission is entitled to commissions on sales made or consummated by his principal or by another agent depends upon the intention of the parties and the interpretation of the contract of employment, and that, as in other cases involving interpretation, all the circumstances must be considered.
 
 
 30
 Id. at 482-83. The court then set forth the underlying "principle of fair dealing" which provides the foundation for all such contractual relationships.
 
 
 31
 It would appear that underlying all the decisions is the basic principle of fair dealing, preventing a principal from unfairly taking the benefit of the agents or broker's services without compensation and imposing upon the principal, regardless of the type of agency or contract, liability to the agent or broker for commissions for sales upon which the agent or broker was the procuring cause, notwithstanding the sales made have been consummated by the principal himself or some other agent. In Michigan, as well as in most jurisdictions, the agent is entitled to recover his commission whether or not he has personally concluded and completed the sale, it being sufficient if his efforts were the procuring cause of the sale.
 
 
 32
 Id. at 483 (emphasis added). See also Kingsley Assoc., Inc., v. Del-Met, Inc., 918 F.2d 1277, 1282 (6th Cir.1990). Thus, as a matter of Michigan law, this principle of fair dealing, often referred to as the procuring cause doctrine, is implied in a commission sales contract. See Davis & Tatera, Inc. v. Gray-Syracuse, Inc., 1992 WL 124336, * 6 (S.D.Ohio May 27, 1992) (In a case involving Ohio law, the court stated, "the [procuring] cause doctrine gives to an agent the right to receive a commission where the agent has done substantially that which was required of him under the terms of his contract. Thus, the doctrine works in conjunction with, and not in place of, the agreement between the parties."). For example, in Shortt v. Centri-Spray Corp., 119 N.W.2d 528 (Mich.1963), the court held that a manufacturer's representative was entitled to commissions on sales made after the termination of his contract with the manufacturer where the representative procured the sales. Id. at 530. This result was reached even though the oral contract between the representative and the manufacturer made no provisions for the payment of commissions upon termination of the contract.[1]
 
 
 33
 In order to properly analyze the contract at issue in this case, we must follow the guidelines set forth by the Supreme Court of Michigan in Reed and consider the intentions of the parties as well as the language of the contract. Unlike the district court, we conclude that the contract is facially ambiguous. The contract provides for commissions on "all goods shipped." J.A. 21. It also states that Peddie will receive a listing of "all shipments on which you have earned commissions." Id. Use of the word "earned" implies that Peddie must have taken an active role in achieving sales in order to receive commissions "on all goods shipped."
 
 
 34
 Obviously, without sales, no goods would be shipped. On the other hand, the statement that Peddie would receive commissions "on all goods shipped" seems to indicate that he would receive commissions regardless of his efforts once K-Mart was acquired as a customer. At the very least, Peddie had to procure K-Mart as a customer to receive commissions of all goods shipped. In any event, both parties agree that the contract does not speak to the question of what would occur to commissions upon termination of the contract. In addition, both parties admit that the question of post-termination commissions was not discussed nor is it addressed by the contract. Thus, neither party could have manifested an intention in this regard to the other party. Therefore, we conclude that the issue of post-termination commissions was undecided at the time the contract was executed. Consequently, the principle of fair dealing, referred to under Michigan law as the procurement doctrine, is implied in this agent-principal commission sales contract under Michigan law.
 
 C.
 
 35
 In Lilley v. BTM Corp., 958 F.2d 746, 751 (6th Cir.1992), petition for cert. filed, 61 U.S.L.W. 3083 (U.S. July 28, 1992) (No. 92-180), we determined that under Michigan law "[a]n agent may recover a commission for customer procurement or sales procurement." We defined customer procurement as that which allows an agent to receive a commission for all sales to a customer that the agent acquired regardless of whether the agent was involved in the particular sales. Id. We defined sales procurement as that which allows an agent to receive a commission only on those particular sales that the agent procures. Id. Under the sales procurement doctrine, the agent may not receive commissions on subsequent sales that he did not procure. Id. We then stated that "[w]hether an agent is entitled to commissions on a customer procurement or sales procurement basis is determined by the contract between the agent and the principal." Id. (citing Butterfield v. Metal Flow Corp., 462 N.W.2d 815 (Mich.App.1990); Shortt v. Centri-Spray Corp., 119 N.W.2d 528 (Mich.1963)).
 
 
 36
 The lone customer procurement case in Michigan is Militzer v. Kal-Die Casting Corp., 200 N.W.2d 323 (Mich.App.1972). In Militzer, the parties made an oral contract which provided for a 5 percent commission on every sale made to customers whom the agent procured. In other words, once the agent procured the customer, he received a commission on every sale regardless of whether he actually procured the sale. However, the oral contract provided no specific arrangement for the payment or nonpayment of commissions upon termination of the agreement. The court determined that the plaintiff was entitled to a 5 percent post-termination commission on all reorders of products where the products were initially ordered during the time that the agreement was in effect. Id. at 325. The court further stated that "[i]f defendant had desired to limit plaintiff's commission in terms of time or amount it could have done so, preferably in writing, in the original agreement."
 
 
 37
 In this case the district court sought to distinguish the present case from Militzer on three bases. First, without explaining its significance, the district court noted that the contract in Militzer was an oral contract whereas the contract in this case is written. Second, the district court determined that the agreement in Militzer required a commission on all sales and "consequently, the representative was entitled to a commission on all sales made prior to termination, even if the shipments of the goods sold did not occur until a later time." J.A. at 28-29. However, the district court failed to recognize that the Militzer court allowed the agent to receive commissions on reorders made post-termination where the reorders were for products that were initially ordered during the time that the contract was in effect. Third, the district court stated that it was significant that in the present case there is a specific provision allowing either party to terminate the agreement upon written notice, whereas, in Militzer, there was no such specific provision. We see no special significance in this difference. Under Michigan law, a principal has the right to revoke the authority given to his agent at will. Garlock v. Motz Tire and Rubber Co., 159 N.W. 344, 346 (Mich.1916). Thus, whether stated or not, an agent-principal contract may be terminated freely unless otherwise provided. For the reasons stated above, we do not believe that the district court properly analyzed the Militzer case.[2]
 
 
 38
 If, in fact, the contract embodies a customer procurement contract where the parties intended that once Peddie acquired K-Mart as a Whitmor customer, Peddie should receive commissions on "all goods shipped" to K-Mart regardless of Peddie's involvement in facilitating these shipments, then Militzer is directly on point. Peddie should receive commissions on all reorders made post-termination on products which were initially sold when the contract was in effect.
 
 
 39
 If, however, this case is a sales procurement case, then Peddie must have procured all sales, even all reorders, in order to receive commissions on those sales or reorders which were made post-termination. See Roberts, 741 F.Supp. at 653 ("It is well established that the successful negotiation of a contract by an agent does not give him a right to commissions on renewal, which he does not secure, in the absence of an express contract to that effect.") (quoting Wood v. Hutchinson Coal Co., 176 F.2d 682, 684 (4th Cir.1949)). The only exception to this rule is where reorders submitted by a customer involve no additional servicing or negotiation. Id. at 655. Under this scenario, the agent would be entitled to commissions on reorders placed post-termination where the reorders were for products whose sales were initially procured by the agent during the time that the contract was in effect. Id.
 
 
 40
 Defendant argues that if this case is any type of procurement case, it is a sales procurement case and that reorder of all Whitmor stock was not automatic but instead required ongoing servicing and maintenance. In support of this argument, Whitmor refers to Jack Peddie's deposition testimony in which he stated that he had ongoing servicing and maintenance duties and that he was aware of situations in which K-Mart had cancelled reorders of products from other companies.
 
 
 41
 However, as previously discussed, the contract is ambiguous as to the basis on which plaintiff will be paid commissions, and the parties did not discuss this issue before entering into the contract. Therefore, neither party could have manifested any intentions to the other regarding the basis upon which commissions would be paid. Under Michigan law, when construing a contract based on the intent of the parties, it is the manifest intentions of the parties which must prevail, not the unexpressed intentions of the parties. See Central Jersey Dodge Truck Ctr. Inc. v. Sightseer Corp., 608 F.2d 1106, 1110 (6th Cir.1979); Moulton v. Lobdell-Emery Mfg. Co., 33 N.W.2d 804, 806 (Mich.1948). Consequently, absent such manifestations at the time the contract was entered into, it would be pointless to remand this case to determine the intentions of the parties. Rather, because the contract is ambiguous, it should be construed most strictly against the drafter. Sightseer Corp., 608 F.2d at 1110; Ladd v. Teichman, 103 N.W.2d 338, 341 (Mich.1960).
 
 
 42
 The interpretation most favorable to Peddie is one where the contract is construed as providing for the payment of all goods shipped once Peddie procured K-Mart as a customer. Thus, as earlier stated, Militzer, a customer procurement case, is directly on point. Following Militzer, amd assuming that Peddie did procure K-Mart as a customer, Peddie should receive a 3 percent commission on all reorders of Whitmor products placed by K-Mart after the termination of the contract where these products were initially ordered during the time that the contract was in effect. On the other hand, if Peddie did not procure K-Mart as a customer for Whitmor's products, then Whitmor would not be liable to Peddie under the contract. Accordingly, this case shall be remanded to the district court for further proceedings consistent with this opinion. We believe that this would be the same result reached by the Supreme Court of Michigan if it were called upon to decide this case.
 
 
 43
 Finally, we have considered defendant's other arguments and find them to be meritless.
 
 III.
 
 44
 For the reasons stated, the summary judgment of the district court is REVERSED, and this case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 45
 KENNEDY, Circuit Judge, concurring.
 
 
 46
 I would hold that the contract here is both a customer procurement contract, as the majority has held, and a sales procurement contract. Peddie was to procure the customer, and as a result, receive commissions on all goods shipped. The contract also referred to commissions earned and Peddie acknowledged that he was to devote some time to sales efforts. In view of the hybrid nature of the contract, I see no reason to deny Peddie damages based on a customer procurement analysis, and concur.
 
 ORDER ON PETITION FOR REHEARING AND SUGGESTION
 FOR REHEARING EN BANC
 
 47
 Jan. 22, 1993.
 
 
 48
 Before: KENNEDY, and MILBURN, Circuit Judges; and POTTER, Senior District Judge.*
 
 
 49
 This case is presently before the court upon defendant Whitmor Manufacturing Co., Inc.'s petition for rehearing and suggestion for rehearing en banc.
 
 
 50
 In our decision of December 2, 1992, we reversed the district court's grant of summary judgment to Whitmor in plaintiff's action alleging breach of contract under Michigan law for failure to pay commissions allegedly owed to plaintiff from sales after plaintiff was terminated as Whitmor's sales representative.
 
 
 51
 In defendant Whitmor's petition for rehearing and suggestion for rehearing en banc, it complains that we not only reversed the summary judgment in its favor but also remanded for a determination of damages. Defendant insists that: "Any reversal of the summary judgment to Whitmor should result merely in a remand for a determination of liability and damages."
 
 
 52
 Upon further consideration, it is ORDERED that our decision of December 2, 1992, be amended so that the last paragraph on page 18 thereof be changed to read as follows:
 
 
 
 *
 Honorable John W. Potter, Senior United States District Judge for the Northern District of Ohio, sitting by designation
 
 
 [1]
 Defendant erroneously states in its brief that the representative in Shortt was awarded commissions for sales made within the time that he was still employed by the manufacturer. This is incorrect. The plaintiff and the defendant had an oral contract in which the defendant agreed to pay the plaintiff a commission of six percent on all sales of the defendant's products sold by the plaintiff. This agreement was terminated on December 31, 1959. The plaintiff then received $1,000 a month as salary until he left the defendant's employ on April 15, 1960. In his complaint, the plaintiff claimed the defendant owed him commissions on orders he solicited in the latter part of 1959 and in the period of 1960 up to April 15. The plaintiff also argued, in the alternative, that if he were not entitled to his commissions to the date he ceased working for the defendant, he should be entitled to commissions on all orders he quoted up to December 31, 1959, even though they were not received or filled until 1960. As previously stated, the Supreme Court of Michigan held that the plaintiff was entitled to commissions on sales made post-termination of the contract where the plaintiff was the procuring cause of the sales prior to the termination of the contract. Id. at 530. The court did not require the sales to have been completed by April 15, 1960, when the plaintiff was still employed by the defendant
 
 
 [2]
 The district court erroneously refers to Militzer as the "Eaton " case. "Eaton" is the name of the account which the representative solicited on behalf of the defendant manufacturer in Militzer
 
 
 *
 Honorable John W. Potter, Senior United States District Judge for the Northern District of Ohio, sitting by designation