McKEAGUE, Circuit Judge,
dissenting.
The Majority finds that the contract between Dietrich and Bell — which provided for commissions on “new business sales”— unambiguously provides Dietrich with customer-procurement commissions. I disagree with the majority’s interpretation of the contract. I would instead find that the contract provided for sales-procurement commissions. Because the contract is silent on the issue of post-termination commissions, I would apply the procuring cause doctrine and affirm the judgment of the district court. I respectfully dissent.
A.
The first issue is whether the contract promises Dietrich sales-procurement commissions or customer-procurement commissions. See Reed v. Kurdziel, 352 Mich. 287, 89 N.W.2d 479, 482 (1958) (noting that an agent’s right to recover commissions depends upon the contract between the agent and the company). “Customer procurement allows an agent to recover a commission for all sales to a customer that the agent procured regardless of whether the agent was involved in the particular sale. Sales procurement allows an agent to recover a commission only on the specific sales that the agent procures.” Lilley v. BTM Corp., 958 F.2d 746, 751 (6th Cir.1992). “Subsequent sales to the same customer that are not procured by the agent [under a sales-procurement commission] do not yield a commission.” Id.
The contract’s plain language indicates that Dietrich was promised sales-procurement commissions. The contract states that commissions were to be provided to Dietrich for “new business sales.” Id. at 13, PagelD # 13. Contrary to the majority opinion’s assertion, Bell does not “turn the inclusion of the word ‘sales’ into ambiguity over how it was to compensate” Dietrich. Maj. Op. at 423. Bell simply relies on the fact that the contract uses the term “sales” rather than customers in arguing that it *427 compensates Dietrich for sales procured rather than customers procured. See R. 1, Contract at 13, PagelD # 13. The use of the word “sales” is highly probative of the fact that these are sales-procurement commissions, just as use of the word “customers” would have led to the opposite conclusion. See id.
The relevant case law further demonstrates that Dietrich’s commissions were based on sales procurement. In Lilley v. BTM Corp., an agent was promised “a five percent commission on sales.” 958 F.2d at 749 (emphasis added). In determining whether the promised commission was based on sales procurement or customer procurement, the Lilley court noted that the company stated in its answer to its complaint that the “parties had a customer procurement contract.” Id. at 752. Despite this admission, the Lilley court still found that the overall discussion of the promised commission as well as the plain language of the parties’ contract pointed to the fact that the promised commission was “based on sales procurement.” Id. Similar to the contract in Lilley, Dietrich was promised “a [1.25% and then 0.75%] commission on sales. ” See id. at 749 (emphasis added). The relevant contractual language is identical, and Dietrich points to nothing in the reeord suggesting any admission by Bell concerning customer procurement. See id. at 752. Ultimately, Dietrich’s claim that his commissions were based on customer procurement is less convincing than the similar claim that was rejected by this court in Lilley. See id.
Militzer v. Kal-Die Casting Corp., 41 Mich.App. 492, 200 N.W.2d 323 (1972), is also of no help to the majority opinion. In Militzer, the contract provided that the agent would be paid “a 5% Commission on all sales to customers he procured....” Id. at 324 (emphasis added). No such contractual language concerning “customers” exists here. In Militzer, the plain meaning of the words “customers he procured” drove the court to conclude that the contract provided for customer-procurement commissions. See 200 N.W.2d at 324. The plain meaning of the words “new business sales” should similarly drive this court to the conclusion that Dietrich’s commissions were based on sales procurement. See id. at 13, PagelD # 13.
When the contract is read as a whole, there is only one conclusion: Dietrich’s commissions were based on sales procurement. See City of Wyandotte v. Consol. Rail Corp., 262 F.3d 581, 585 (6th Cir.2001). According to the contract, Dietrich had to first book two million dollars in “new sales ” before he would be paid any commissions at all. R. 1, Contract at 13, PagelD # 13 (emphasis added). Like the provision discussing the level of Dietrich’s commissions, this two-million provision does not mention customers and instead focuses on sales. Other contractual provisions cited as support in the majority opinion, such as to which employee Dietrich reported and the travel associated with the job, do nothing to advance Dietrich’s claim that the commissions were customer-procurement commissions. Because the plain meaning of the contract and the relevant case law indicate that the commissions were based on sales procurement, I would find that the contract unambiguously pro-rides for sales-procurement commissions.
B.
The second issue is whether the contract between Dietrich and Bell contemplated post-termination commissions. As the majority opinion concedes, the contract “says nothing regarding termination[.]” Maj. Op. at 424; see also id. at 424 (noting that the contract “lacks any mention” of what would occur in the event of termination). As the district court observed, even Diet *428 rich himself admits that the contract “does not explicitly discuss termination.” See R. 43, Dist. Ct. Op. at 7 n. 2 (internal citation omitted). The contract is thus “silent as to entitlement to post-termination commissions.” Fernandez v. Powerquest Boats, Inc., 798 F.Supp. 458, 460 (W.D.Mich.1992).
Under Michigan law, when a “contract is silent [as to post-termination commissions], the agent is entitled to recover a commission on a sale, whether or not he personally concluded it, only where it can be shown that his efforts were the ‘procuring cause.’ ” Id. at 461 (quoting Roberts Assocs., Inc. v. Blazer Int’l Corp., 741 F.Supp. 650, 652 (E.D.Mich.1990)). The procuring cause doctrine is implied in commission-sales contracts and is based on the principle of fair dealing. See Reed, 89 N.W.2d at 482-83; see also Jack Peddie & Assocs., Inc. v. Whitmor Mfg. Co., Inc., 980 F.2d 729 (6th Cir.1992) (unpublished) (applying this doctrine). The procuring cause doctrine applies “when a sales agent’s authority or employment is terminated and no explicit agreement had been reached over the payment of commissions in the event of termination.” Hardy v. Reynolds & Reynolds Co., 311 Fed.Appx. 759, 765 (6th Cir.2009) (emphasis added). As to the contract between Bell and Dietrich, it is clear that it does not contain an “explicit agreement ... over the payment of commissions in the event of termination.” [1] Id. Therefore the district court was correct in applying the procuring cause doctrine. See id.
It is well-settled that under Michigan law, “it is the acquisition of orders, not the acquisition of the customer that is proteet-ed by the ‘procuring cause’ doctrine.” William Kehoe Assocs. v. Ind. Tube Corp., 891 F.2d 293 (6th Cir.1989) (discussing Reed, 89 N.W.2d at 479). “Where the agent does not participate in the negotiation of a given contract of sale, the agent is not the ‘procuring cause’ of post-termination sales, even though he may have originally introduced the parties.” APJ Assocs., Inc. v. N. Am. Philips Corp., 317 F.3d 610, 616 (6th Cir.2003) (citing Roberts Assocs., 741 F.Supp. at 652).
Applying that standard here, the district court’s analysis is unassailable. “Given the ‘New Business Sales’ language of their [contract], [Dietrich] must have procured all sales, even all reorders, in order to receive commissions on those sales or reorders that were procured after his termination.” R. 43, Dist. Ct. Op. at 8, Pa-gelD # 640 (internal citations omitted). But both parties agree that Dietrich was already compensated for the commissions on the sales that he obtained prior to Bell terminating his employment.[2] And even if Dietrich introduced Bay Valley to Bell, both parties agree that Bay Valley’s orders were placed six months after Dietrich’s termination. See APJ Assocs., 317 F.3d at 616.
Finally, the district court’s analysis of Dietrich’s claims of violations under the Michigan Sales Representative Commissions Act, Mich. Comp. Laws § 600.2961(2), of breach of implied contract and unjust enrichment was sound because the Act does not “supersede an agreement of the parties regarding payment of post-termination commissions.” R. 43, Dist. Ct. Op. at 9, PagelD # 641 (citing APJ Assocs., 317 F.3d at 616). *429 Here, there is a contract between Bell and Dietrich concerning sales-procurement commissions, and thus the Act does not supersede the agreement between the parties. See Barber v. SMH (US), Inc., 202 Mich.App. 366, 509 N.W.2d 791, 796 (1993) (noting that courts only imply contractual terms when there is “no express contract covering the same subject matter”). Even viewing the evidence in the in the light most favorable to Dietrich, all of Dietrich’s claims fail as a matter of law, and the district court’s grant of summary judgment to Bell was appropriate. I respectfully dissent.

. The contract specifies distinct levels of sales-procurement commissions for two different years, but this language does not address what would occur in the event of termination.

. The parties agree that Dietrich’s employment was terminated because he lied to one of his superiors.